593 So.2d 357 (1992)
Betty BRUNO
v.
HARBERT INTERNATIONAL INC., et al.
No. 91-C-1444.
Supreme Court of Louisiana.
January 17, 1992.
*358 Jacques Cousin, Cousin & Cousin, New Iberia, for applicant.
Dennis R. Stevens, Gibbens & Blackwell, New Iberia, for respondent.
HALL, Justice.
The primary issue in this worker's compensation suit is whether the district court's factual finding that plaintiff sustained a work-related injury was manifestly erroneous or clearly wrong. The appellate court concluded that there was such error and reversed the district court's judgment awarding benefits for total and permanent disability. Bruno v. Harbert International Inc., 580 So.2d 1018 (La.App. 3rd Cir. 1991). On Mrs. Bruno's application, we granted certiorari to review the correctness of that decision. 586 So.2d 519 (La.1991). As our reading of the record convinces us that the appellate court misapplied the manifest error/clearly wrong standard, we reverse.

I.
Mrs. Bruno was hired by Harbert International, Inc., in March 1986, as a process technician. Her duties included cleaning and pumping out large water and molasses tanks. She worked four days on, four days off shifts, alternating days and nights. Mrs. Bruno claims that she was injured in the course and scope of her employment at Harbert.
Mrs. Bruno filed a claim for compensation with the State of Louisiana, Department of Labor, Office of Worker's Compensation. The office recommended payment of benefits. The office's recommendation was rejected, and Mrs. Bruno filed suit in district court against Harbert and its insurer, *359 United States Fidelity & Guaranty Company.
Plaintiff testified that on January 24, 1988 (the last day of a four-day shift), she injured her lower back while lifting and carrying a 65-pound pump and doing heavy manual labor. At the time, she felt a "tightness" in her back. Despite being in pain, she completed the few remaining hours in her shift. During her next four days off, she rested. On January 29th, she returned to work and finished another four-day shift. Plaintiff testified that since then she has been unable to return to work.
Plaintiff further testified that during her last four-day shift she had difficulty performing her duties, but that her supervisor and co-worker, Gary Adams, "sort of let [her] skate." While she did not file a formal accident report during that time, plaintiff testified that she told Gary Adams and a couple of other co-workers that she was in pain. She further testified that the reason she delayed filing an accident report was that she thought it perhaps was "just a muscle strain," that she was "not in the habit of reporting every little nick and bruise," and that she believed she "could work through it and it would go away."
On her next day off, February 1, 1988, plaintiff saw Dr. Fletcher Sutton, an orthopedic surgeon. While she did not relate to Dr. Sutton a definite history of an accident or injury, she testified that she told him that she had done some "stressful work." She further testified that the reason she did not relate an accident to Dr. Sutton was that she believed it to be just a pulled muscle and that she did not want to report something so minor. On that same date, she telephoned a representative of Harbert, reported an injury and informed that her doctor had advised her to stay at home. Plaintiff testified that before the date of this accident she had not missed any work at Harbert.
Plaintiff testified that on February 8, 1988 she orally reported the alleged work-related accident to her employer. On February 11, 1988, she was interviewed by Mr. St. Marie, Harbert's employer's administrative manager, for the purpose of completing an accident report.
By stipulation, the parties agreed that Mr. Freddy Bruno, plaintiff's husband, and Ms. Margaret Wiltz, plaintiff's friend and neighbor, would both testify and corroborate plaintiff's version of the onset of her symptoms coincidentally with the January 24th incident, her physical problems thereafter, and the absence of any physical problems before the incident.
Dr. Sutton's deposition was taken for the purpose of use at trial and was introduced into evidence. He testified that when he first saw plaintiff on February 1, 1988, she complained of pain in her lower back in the posterior left hip and thigh area and that she told him this pain had begun gradually two weeks earlier and had increased in severity. Dr. Sutton further testified that while at that time plaintiff did not relate any history of an accident, "she did have a somewhat long history of intermittent back pain on and off which she had either seen Dr. Segura or Elias for about a year, year and a half previously." Dr. Sutton also testified that when he saw plaintiff in the hospital on February 29, 1988, she related to him for the first time a specific accident: "she felt that somewhere the two or three weeks previous that she was lifting a pump at work and felt some aggravation in her back at that time and really never did get very bad until two or three days later."
Dr. Sutton also testified that while plaintiff was hospitalized in February 1988, he determined that she had a herniated disc in the lower back.
Dr. Sutton continued to see Ms. Bruno over a period of time. He was of the opinion that she was disabled from performing heavy manual labor. At trial and on appeal, defendants took the position that she is not totally and permanently disabled.
Plaintiff's co-worker and supervisor, Gary Adams, testified on defendants' behalf that he recalled on the last day of a particular shift he and plaintiff had picked up a pump weighing about 65 pounds and moved it from one place to another. He testified that at the time they lifted the pump plaintiff did not complain. He further *360 testified that on the first day of that particular shift, plaintiff came in complaining of back problems and that during that shift she asked him if he knew a good chiropractor. Mr. Adams further testified that he was sure that plaintiff's back pain complaints were made before the pump-lifting incident because he had underlined those four dates on a shift schedule that he maintained. Mr. Adams testified that he underlined those dates either on January 20th or 21st, that he made no other notation on the shift schedule, and that this was the first time he had underlined dates on his schedule.
Mr. Adams also testified that he was sure that the shift during which plaintiff complained was the last shift she worked at Harbert. Plaintiff's payroll records as well as the accident report, however, confirm that plaintiff's last shift at Harbert was the shift running from January 29th through 31st, that is, the next shift she worked after the pump-lifting incident.
Defendants also presented the testimony of Brad St. Marie, Harbert's personnel supervisor who interviewed plaintiff. Mr. St. Marie testified that plaintiff was initially unable to relate her injury to any specific on the job incident. He further testified that it was only after he explained to plaintiff that compensation benefits only cover work-related accidents that she responded that "it must have happened when Gary and I were moving the pump."
The trial court, in finding in plaintiff's favor, stated that the testimony of plaintiff and Gary Adams proved a work-related accident by a preponderance of the evidence. In so finding, the trial court in its reasons for judgment expressly reconciled the inconsistencies between the testimony of plaintiff and Gary Adams as follows:
There was some confusion in Mr. Adams' testimony in that he was certain that [plaintiff's complaints of back pain] occurred the week before this particular incident but that he was also certain that the complaints were made on the last shift that Betty Bruno worked. It seems reasonable that this gentlemen would recall Mrs. Bruno complaining and would also seem reasonable that he would recall that after that four day shift of complaining that she never came back to work. This is in fact and indeed consistent with the testimony of Mrs. Bruno and that she hurt her back the shift before her very last shift.
On defendants' appeal, the court of appeal held that "[t]he trial judge's evaluations of credibility and his factual finding that Betty Bruno did prove a work accident causing her disabling condition by a preponderance of the evidence are manifestly erroneous." The correctness of that holding is the issue we address in this case.

II.
As a threshold requirement, a worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031 (emphasis supplied). The applicable statutory definition of "accident" is "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." LSA-R.S. 23:1021(1). While that definition was amended after the occurrence of the accident involved in this case, the governing law in a compensation action is that which was in effect at the time of the alleged injury. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991).
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). Indeed, it is well-settled in Louisiana that an "accident" exists when "heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959); Nelson, supra (collecting cases). Moreover, Louisiana courts view the question of whether there was an accident from the worker's perspective. Williams, supra.
*361 Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson, supra. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court's decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
Attempting to give meaning to the nebulous terms "clearly wrong" and "manifest error," we recently enunciated the following general principles that govern an appellate court's power to reverse a trial court's factual findings:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. Esco, 549 So.2d 840, 844-45 (La. 1989) (citations omitted and emphasis supplied).
As reflected by the underscored language above, in Rosell, supra, we identified two factors that limit the deference due the trier of fact. In West, supra, we identified a third factor especially apt in compensation actions: "the appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." West, 371 So.2d at 1150; See Thomas v. RPM Corp., 449 So.2d 18, 21 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984).
Apparently following the principle set forth in West, supra, the trial court accepted *362 as true plaintiff's testimony regarding the work-related accident. In so doing, the trial court found plaintiff "very believable and very honest" and her demeanor and candor in testifying impressive. A contrary finding, the trial court observed, could only be reached by concluding that the plaintiff was lying. The trial court further found that Mr. Adams' testimony, when reconciled, corroborated plaintiff's testimony. Thus, the trial court concluded that plaintiff had met her burden of establishing a work-related accident by a preponderance of the evidence.
In reversing, the appellate court made two findings. First, it found West, supra, factually distinguishable from the instant case, citing contradictions of, and discrepancies in, plaintiff's testimony. Second, it found the trial court's factual finding of a work-related accident manifestly erroneous. We conclude that both of these findings of the appellate court were erroneous.

III.
Plaintiff contends, supported by the trial court, that West, supra, is analogous and that the principles set forth therein are controlling. Conversely, defendants contend, supported by the court of appeal, that West, supra, is distinguishable and that the principles set forth therein are inapplicable because plaintiff's testimony is contradicted and uncorroborated.
In West, supra, both lower courts had held that the worker failed to meet her burden of establishing a work-related accident. While the instant case appears before us in a posture different from West, supra, in that the trial court held in favor of the plaintiff, we find that it is not factually distinguishable in any material respect. Indeed, we find West dispositive, and, as in West, we analyze the factors relied upon by the appellate court as casting doubt on the reliability of plaintiff's testimony and the reasons why these factors are insufficient in this context to discredit plaintiff's uncontradicted testimony of a work-related accident:
1. Plaintiff did not provide a history of the accident to her treating physician, Dr. Sutton. The appellate court notes that "[plaintiff] had many opportunities [including numerous phone and office contacts after the initial visit] to provide a history of a work-related accident [to Dr. Sutton] and did not do so." Bruno, 580 So.2d at 1021. Dr. Sutton's deposition testimony, discussed above, directly contradicts this statement. Dr. Sutton testified that on February 29, 1988, plaintiff related the pump-moving incident to him and attributed the onset of her pain to that work-related incident.
2. Plaintiff did not immediately notify her employer of the accident. The Third Circuit notes that Mr. Adams as shift supervisor was responsible for filing accident reports and supplying such reports to the plant manager and that while plaintiff was working with Mr. Adams at the time the accident occurred, plaintiff failed to inform him of any pain or tenderness at that time. As we recently noted in Nelson, supra, merely because a worker completes a day's work without reporting an accident does not preclude the worker from recovering compensation.
The appellate court emphasizes Mr. Adams' testimony that plaintiff complained of back pain the week before the alleged accident. In this regard, the court mentions that Mr. Adams "made an entry" in the shift schedule he maintained reflecting that plaintiff's back complaints were made several days before the alleged accident. Bruno, 580 So.2d at 1021. The trial judge was apparently skeptical of Mr. Adams' testimony regarding his underlining on the shift schedule. Based on our review of the record, we cannot say the trial judge erred in discrediting Mr. Adams' testimony regarding the dates.
The appellate court further found that in reconciling the testimony of plaintiff and Mr. Adams, the trial court erred. In so doing, however, the appellate court mischaracterized the trial court's holding, stating: "we find it quite clear that Mr. Adams did not agree that plaintiff complained of an accident or injury on January 24, 1988." Id. On the contrary, the trial *363 court's holding was not that Mr. Adams had agreed that plaintiff complained on the date of the accident, but rather that Mr. Adams likely had confused the week plaintiff did the complaining with the week of the accident. Based on Mr. Adams' testimony that the complaining occurred on the last week plaintiff worked, the trial court resolved the conflict in Mr. Adams' testimony by finding it likely that plaintiff complained, as she testified, during the week after the injury, which was her last week of work at Harbert. We cannot say the trial court's resolution of this conflict is unreasonable. Indeed, this type of credibility call is governed by the principle enunciated in Rosell, supra, that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." 549 So.2d at 844 (citing Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978)).
3. Plaintiff did not immediately file an accident report. The Third Circuit relies upon Mr. St. Marie's testimony that plaintiff was initially uncertain as to whether she had sustained a work-related injury and that it was only after he told her that compensation benefits are restricted to work-related injuries that plaintiff related her injury to the pump-lifting incident. We note that the record reflects that on February 8th, three days before plaintiff met with Mr. St. Marie, she reported a work-related injury to Harbert. As to plaintiff's delay in filing a formal accident report, we noted in West, supra, that a worker's delay in reporting an injury "is more corroborative of her initial unawareness of the seriousness of the injury ... than it is any cause to doubt her credibility about its occurrence." West, 371 So.2d at 1150. This is especially true when, as in the instant case, the delay is of a relatively short duration, only two weeks.
4. Plaintiff had a history of prior back problems. The Third Circuit especially emphasizes plaintiff's failure to state on direct examination her history of prior back problems. Specifically, the Third Circuit notes that on cross-examination plaintiff conceded that she had injured her back during a prior employment and that she had filed a previous lawsuit for injuries arising out of an automobile collision, alleging in the petition "`serious and painful injuries to her back, neck, head, mouth and teeth.'" Bruno, 580 So.2d at 1022 (emphasis in original). As to the prior back injury, plaintiff testified that this was only a "muscle spasm" and that she had revealed this prior injury in her pre-trial deposition. As to the prior lawsuit, the trial judge expressly noted that this was an unverified petition and that obviously the plaintiff had not drafted the petition. Further, plaintiff testified that in the automobile accident she had injured her neck, not her back. Based on these factors, we cannot say that the district court was unreasonable in resolving both of these inconsistencies in plaintiff's favor.
In any event, in West, supra, we expressly rejected reliance on this factor as a basis for discounting a worker's testimony. Particularly, we reasoned:
Even if there were a pre-existing latent back disability, nevertheless workmen's compensation benefits are payable when a work-accident aggravates or accelerates it, producing disability. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). "A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977).
371 So.2d at 1149.
Based on the above, we find that the four factors relied on by the court of appeal do not constitute sound reasons for rejecting the plaintiff's uncontradicted testimony of a work-related accident. Thus, we find that the appellate court erred in *364 declining to follow the principle enunciated in West, supra.
We further find that the four factors discussed above presented the trial court with a credibility question. It is well-accepted that credibility calls are the function of the trial court. Holmes v. International Paper Co., 559 So.2d 970, 976 (La.App. 2d Cir.1990). Based on our careful review of the record, we cannot say that the trial court was clearly wrong in rejecting the attack on plaintiff's credibility. Rather, as discussed below, we find that the appellate court was wrong in substituting its own credibility evaluation for that of the trial court and in reweighing the evidence as if it were the trier of fact. Virgil, supra.

IV.
As noted, the primary issue in this case is whether the appellate court misapplied the manifest error rule in reversing the trial court's factual finding that a work-related accident occurred. We find it did. More particularly, we find that the appellate court, contrary to Rosell, supra, conducted what amounted to a de novo factual review by disregarding plaintiff's uncontradicted testimony and concluding that the trial court was manifestly erroneous in rejecting the part of the testimony of defendants' witness, Mr. Adams, that was in conflict with plaintiff's testimony.
In finding manifest error, the appellate court relied upon the same four factors discussed above with one addition: that the plaintiff was the only witness. As discussed above, those four factors are insufficient to support the appellate court's finding of manifest error. Likewise, we find the appellate court's reliance on the fact that plaintiff was the only witness entirely misplaced. As we stated in West, supra, it is improper for a court to impose a higher standard of proof on a worker simply because she was the only witness, as to do so "in effect place[s] a duty upon this compensation claimant to prove her case greater than that required by the jurisprudence." Id. at 1150. Significantly, the Third Circuit did just that by stating as a rule, based upon a string cite of its own decisions, that "where the plaintiff's testimony is the sole evidence, it must be clear and convincing." Bruno, 580 So.2d at 1020. We find this statement to be in direct conflict with West, supra, and to be legally incorrect. As we held in West, supra, the worker's burden of proof, even if the worker is the sole witness of the accident, is by a preponderance of the evidence.

V.
To conclude, conflicting evidence was presented in this case on the issue of whether a work-related accident occurred. The trial court resolved this conflict in plaintiff's favor, and the court of appeal reversed. Our review of the record convinces us that the trial court was not clearly wrong in finding that plaintiff proved by a preponderance of the evidence that she sustained a work-related accident. Thus, we reverse the appellate court's contrary finding.
On appeal, defendants also specified as error the trial court's finding that plaintiff is totally and permanently disabled, arguing that there are certain types of sedentary work she can do in spite of her physical limitations. Since the court of appeal did not reach the disability issue, we find it appropriate to remand the case to that court for it to decide that issue.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED TO THE COURT OF APPEAL.