647 So.2d 475 (1994)
Betty FRELOW, Plaintiff-Appellant,
v.
Jeanerette MILLS, Defendant-Appellee.
No. 94-799.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Writ Denied March 10, 1995.
*476 Randall Scott Iles, De Ridder, for Betty J. Frelow.
Samuel Robert Aucoin, Lafayette, for Jeanerette Mills, et al.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
THIBODEAUX, Judge.
The plaintiff, Betty Jane Frelow, appeals a judgment of the Office of Workers' Compensation Administration in favor of her employer, Jeanerette Mills, d/b/a Martin Mills, Inc., which denied her temporary total disability benefits. The administrative hearing officer concluded that Ms. Frelow did not prove that a work-related accident occurred.
Because the evidence amply demonstrates that the hearing officer was manifestly erroneous, we reverse. Additionally, we award statutory penalties and attorney fees of $7,500.00 for the arbitrary and capricious conduct of the employer in its refusal to pay temporary total benefits and medical expenses.

ISSUE
The issue presented for review is whether the hearing officer committed manifest error in finding Betty Frelow's injury was not a compensable accident under the Louisiana Workers' Compensation Act.

FACTS
In October, 1992, Betty Frelow filed this workers' compensation claim against her employer, Jeanerette Mills, (d/b/a Martin Mills, Inc.) without benefit of counsel. Ms. Frelow filed a 1008 form, contending her back was injured on August 6, 1992, while on the job. On November 16, 1992, her employer answered, and denied Ms. Frelow's injury occurred in the course of her employment. On November 30, 1992, Ms. Frelow retained counsel. After trial, the hearing officer denied her claim, stating in part:
"Frelow was a long-time employee who had actually been, for a short time, a member of management as a trainer. The Court finds it absolutely inconceivable that Frelow did not know she had to report all *477 accidents at the work place to some member of management. And yet, on August 6, 1992, Frelow complained of pain in her neck and arm to her instructor, her supervisor, the plant nurse and the safety supervisor. She did not tell any of these people she had had an accident at work. She denied to the nurse that she had had an accident. In her 1008 and claim data she denies having an accident at work. In a recorded statement given to Carol Wright, an insurance adjuster, on August 12, 1992 she denied having an accident at work. When she first saw Dr. Falterman on August 6, she did not given [sic] him a history of an accident at work. The same is true for her initial visit to Dr. Rivet (Rivet Deposition, page 10, lines 2-18).
The Court finds that Frelow's trial testimony concerning the alleged accident of August 6th was contradictory, less than credible and not supported by contemporaneous events. The testimony of her witnesses was also confusing and contradictory.
Therefore, the Court finds that Frelow has failed to show by a preponderance of the evidence that she was involved in a work related accident on August 6, 1992 in which she was injured and incurred a consequent disability."
Beginning in 1977, Ms. Frelow worked as a set sleeve seamstress at Jeanerette Mills for approximately two years. In 1981, Ms. Frelow returned to Jeanerette Mills and worked as a set sleeve seamstress until she was injured on August 6, 1992. Ms. Frelow has never participated in a civil lawsuit or filed a workers' compensation claim. Ms. Frelow has not been in any accident or had any other work injury.
In her job at the mill, Ms. Frelow sewed sleeves onto t-shirts. A set sleeve seamstress lifts and pulls bundles of t-shirts and sleeves onto her work table, and then sews the shirts. The bundles weigh between two and fifteen pounds each. In June, 1992, Ms. Frelow began experiencing soreness in her neck. She attributed this to fatigue from the long hours she was working at the time. However, on August 6, 1992, while performing her regular duties, Ms. Frelow reached over, picked up a bundle and experienced severe pain and numbness in her left hand. At the hearing, Ms. Frelow described her pain as excruciating; she felt a snap in her neck, and she was frightened by the numbness in her hands.
Immediately after experiencing this pain, Ms. Frelow went to her fellow floor worker, Ruth Blunt, and told her that her hand and neck were hurting. Ms. Blunt told Ms. Frelow to see the plant nurse. Ms. Frelow then went to Gina Reaux, the nurse. According to Ms. Frelow, the nurse did not conduct any sort of examination, did not discuss her symptoms, and gave her Aspercreme for the pain. Ms. Frelow attempted to return to her sewing station, but the pain was severe, and she could not work.
Ms. Frelow then informed Larry Judice, her supervisor, and Jim LeBlanc, the plant's safety director, about her injury and complained of pain. They advised her that she could see a doctor but at her own expense. The same morning, Ms. Frelow went to Dr. James Falterman, the company doctor.
Ms. Frelow testified she told Dr. Falterman how she lifted bundles at work. Dr. Falterman diagnosed her problem as a pinched nerve, and recommended light duty work. Ms. Frelow attempted light duty for one week, but her neck pain increased. Dr. Falterman gave her a two week leave of absence; Ms. Frelow has been unable to work since August 6, 1992.
Ms. Frelow saw Dr. Falterman from August 6, 1992 through November 6, 1992. During her course of treatment, Dr. Falterman told Ms. Frelow to stop paying for his services, because her injury was work related. When his treatment plan was not successful, he recommended a neurosurgeon, Dr. J. Robert Rivet.
Dr. Rivet attempted a conservative treatment plan of physical therapy, heat, and traction. These treatments did not improve Ms. Frelow's pain. Dr. Rivet recommended a myelogram, a post-myelogram CT scan, and a discogram. The tests indicated Ms. Frelow had a herniated disc at C5-6, and Dr. Rivet recommended fusion. An anterior cervical *478 diskectomy and fusion were performed in December, 1992.
Following the operation, Ms. Frelow improved for a while, and then pain in her neck and left arm returned. At the time of trial, Ms. Frelow was experiencing pain three to four days a week. She attempted physical therapy for approximately two months. Her pain did not improve. Dr. Rivet recommended another myelogram and post-myelogram CT scan, but these tests were not approved by her major medical carrier. Ms. Frelow is still under her doctor's care, and cannot return to her former employment.

LAW AND ANALYSIS
La.R.S. 23:1021(1) defines accident as follows:
"(1) `Accident' means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."
In this case, the record strongly establishes that an accident occurred which entitles Ms. Frelow to workers' compensation benefits.
The plaintiff-employee in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno v. Harbert International, Inc. 593 So.2d 357 (La.1992).
The worker's testimony alone may be sufficient to discharge her burden of proof, if: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. The supreme court has identified a third factor which limits the deference due a fact finder: "the appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." West, 371 So.2d at 1150 (citations omitted); see also Bruno, 593 So.2d at 361.
When evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. West; Bruno, supra. The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel its own evaluations and inferences are as reasonable. West, supra.
However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The hearing officer found Ms. Frelow was not a credible witness, based on her previous experience in management, her intelligence, and her confusing and contradictory testimony. The hearing officer concluded that Ms. Frelow failed to give a clear history of an accident at work to her supervisors or to her treating physicians. The hearing officer also found the testimony of Ms. Frelow's witnesses confusing and contradictory. These findings are unreasonable and not supported by objective evidence in the record.
Ms. Frelow testified she worked as a trainer in the mill for a short period of time. This facet of her employment involved training new employees in setting sleeves on t-shirts. This does not qualify as management experience. Ms. Frelow and her two co-workers all testified that no one had ever given them any instructions about how to report accidents or to fill out workers' compensation forms.
*479 While we do not dispute the hearing officer's finding that Ms. Frelow is intelligent, we note that legislators, attorneys and the judiciary differ on what constitutes an "accident" within the meaning of La.R.S. 23:1021(1). Ms. Frelow should not be penalized for her layperson's understanding of the term. While Ms. Frelow may not have used the word "accident" to describe what happened to her, the identifiable, precipitous event (of pulling the bundle toward her) directly produced sudden objective findings of an injury, within the meaning of the statute. Indisputably, Ms. Frelow promptly notified all of her supervisors and the medical and safety personnel at the plant that she was in pain.
We do not find Ms. Frelow's testimony confusing or contradictory. Ms. Frelow's version of the occurrence which led to her injury is completely in accord with contemporaneous events. When Ms. Frelow pulled the bundle of t-shirts toward her, she felt a snap in her neck, and excruciating pain. This is an accident at work which caused her injury and subsequent disability. Louisiana courts have consistently viewed the question of whether there was an accident from the worker's perspective. Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989); Bruno, 593 So.2d at 360.
Before leaving her work station to report the accident to her supervisor, Ms. Frelow told two of her co-workers, Lola Franklin and Regina Grant, that she hurt herself. Lola Franklin testified Ms. Frelow told her that her hand became numb after she picked up a bundle. After seeing the nurse, Ms. Frelow returned to her work station, and Regina Grant asked where she had been. Ms. Frelow told her she had been to the nurse's office because she pulled a bundle and had pain in her shoulder and numbness in her hand.
After the injury, Ms. Frelow promptly notified her fellow floor worker, Ruth Blunt, (who is also a supervisor) and then saw the plant nurse, Gina Reaux. Ms. Blunt testified Betty Frelow was a good, punctual worker. However, Ms. Blunt's testimony is inconsistent and confusing. Ms. Blunt said she did not remember Ms. Frelow complaining to her of any pain before or on August 6, 1992. Then, very shortly thereafter in her testimony, Ms. Blunt recalled Ms. Frelow saying her arm was hurting on August 6, and Ms. Blunt recommended she see the nurse. Ms. Blunt also testified that in July, Ms. Frelow told her she heard a pop in her neck when she was combing her hair at home. Ms. Blunt testified that on the day of the alleged injury she did not ask Ms. Frelow what happened to cause her pain.
Ms. Reaux, the nurse, testified she did not remember Ms. Frelow coming into the office, but she made a report at the time. The report indicates Ms. Frelow's pain had begun earlier, she was currently having neck and shoulder pain, and numbness in her hand. The report also indicates no accident occurred. However, Ms. Reaux's testimony is unclear and inconsistent.
Ms. Reaux testified she had no independent recollection of Betty Frelow's visit to her office, but she remembered she did not give Ms. Frelow any Aspercreme. Ms. Frelow testified the nurse gave her Aspercreme for her pain. Ms. Blunt corroborated this testimony. Ms. Reaux did testify her usual procedure was to write a nurse's note, give Aspercreme or something for pain, and take blood pressure. While the nurse's report does not indicate Ms. Frelow used the word "accident," the report is consistent with Ms. Frelow's claim that her pain began at work. Ms. Frelow also testified she had pain before August 6, but she attributed this to fatigue and soreness. Ms. Frelow consistently testified the pain on August 6 was excruciating and not like any pain she had felt before.
Ms. Frelow reported her pain to her supervisor, Larry Judice, and to the safety director, Jim LeBlanc. Larry Judice testified Ms. Frelow told him she had been hurting for a while, and she thought it was from work. He testified he did not remember all that was said about Ms. Frelow's injury on August 6. Mr. Judice said he did not ask her about the onset of her pain. He also testified he had never told Ms. Frelow how to fill out a workers' compensation claim. Because Ms. Frelow did not complain of an accident at the time, Larry Judice did not send her to the safety director.
*480 Jim LeBlanc, the safety director, remembered Ms. Frelow came to him and said she had been having trouble with her neck and hand. Mr. LeBlanc did not fill out any report at the time of the alleged incident. He testified Ms. Frelow said she had been experiencing pain that was gradually getting worse. Mr. LeBlanc also testified he asked Ms. Frelow if she lifted anything, and she told him she had not. Ms. Frelow testified she told Jim LeBlanc she was going to the doctor, and Mr. LeBlanc did not ask her how she was injured. Jim LeBlanc's testimony does not fully contradict Ms. Frelow's version of events, and neither party introduced any written reports to corroborate their conversation. Mr. LeBlanc had already decided Ms. Frelow's injury was not work-related when he received Dr. Falterman's report of September 15, 1992, which indicated her injury was work-related.
The hearing officer's finding that Ms. Frelow denied having an accident at work in a taped statement to the insurance adjuster is not supported by the record. On August 12, 1992, Carol Wright, an insurance adjustor for Martin Mill's insurer, taped a conversation with Ms. Frelow. When Ms. Wright asked when her problems started, Ms. Frelow responded that it had been two weeks earlier. Ms. Frelow told Ms. Wright the diagnosis was a pinched nerve, and the pain started when she was at work, during her regular job duties. Ms. Frelow attributed this to fatigue. Ms. Wright asked if she had an accident, and Ms. Frelow said no. Then Ms. Frelow said she first reported the pain the previous week because her pain had increased.
Ms. Frelow told Ms. Wright she saw Dr. Falterman the day of the injury. When Ms. Frelow told Ms. Wright what the doctor said caused her pain, the tape was cut off. This statement is incomplete, and therefore not conclusive.
The hearing officer said Ms. Frelow did not give a history of an accident to either Dr. Falterman or Dr. Rivet. The record does not support this conclusion. Dr. Falterman initially diagnosed Ms. Frelow's problem as a pinched nerve. By September 15, 1992, Dr. Falterman's diagnosis was that her injury was work-related. Dr. Rivet testified he was not sure of the cause of her injury. However, because he was her surgeon, and not her diagnostician, the fact that Ms. Frelow did not relate an accident to him is not unusual.
The hearing officer's finding that "[i]n her 1008 and claim data she [Ms. Frelow] denies having an accident at work" is additionally not supported by the record. There is a complete absence of any denial in her Disputed Claim for CompensationForm 1008. If anything, this form supports Ms. Frelow's contention. For instance, section 2 of paragraph 47 asked "Give the full name of the person you reported your accident to." (Emphasis supplied). She supplied the appropriate information. Section 3 requested the names of the physicians she had seen for "this injury." Ms. Frelow again answered appropriately. Under Section V, Ms. Frelow stated that:
"[i]njury is due to working conditions ... I am appealing their decision because injury is caused from working conditions. This is the only job I have and I have never been in any type of accident whatsoever. I feel I am intitled [sic] to recieve [sic] workers compensation because injury occured [sic] on the job." (Emphasis supplied).
Ms. Frelow's assertion that she had never been "in any type of accident whatsoever" plainly meant that she had not had any previous accident or injury.
Under La.R.S. 23:1021(1), an incident which directly produces objective findings at the time of an injury is a compensable accident. The evidence clearly confirms such an occurrence. Ms. Frelow should not be required to understand and use workers' compensation terminology in order to be compensated for her work-related injury.
We find no other evidence discredits Ms. Frelow's version of the incident; her testimony was corroborated by the circumstances following the incident. Because the hearing officer refused to accept as credible the uncontradicted testimony of Ms. Frelow and her co-workers, the manifest error/clearly wrong standard of review does not require that we affirm his findings.
*481 Ms. Frelow is entitled to the payment of all medical expenses and temporary total disability benefits at the rate of $206.80 per week from August 6, 1992 until she is no longer disabled.

PENALTIES AND ATTORNEY'S FEES
It is well settled that a workers' compensation claimant is entitled to penalties and attorney's fees if the benefits are withheld or terminated arbitrarily, capriciously, or without probable cause. La.R.S. 23:1201; 23:1201.2; Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3d Cir.1992). To avoid the imposition of penalties, an employee's right to compensation has to be reasonably controverted. La.R.S. 23:1201(E). Given the facts, medical and otherwise, known by Jeanerette Mills, did it have "sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant?" Guillory v. Soloco, Inc., 570 So.2d 139, 144 (La.App. 3d Cir.1990) quoting Chellette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3d Cir.1985). We think not.
We have detailed the factual circumstances giving rise to Ms. Frelow's accident and the corroborating evidence in support of her claim. It is unnecessary to revisit those facts. They fully support the conclusion we have reached.
We hold Jeanerette Mill's refusal to pay temporary total disability benefits and medical expenses to be arbitrary and capricious. Under La.R.S. 23:1201(B) & (E), Ms. Frelow is entitled to penalties amounting to twelve percent of all unpaid medical expenses and unpaid compensation installments from August 6, 1992 until compensation commences.
Ms. Frelow is also entitled to an award of attorney's fees under La.R.S. 23:1201.2. We find $10,000.00 to be reasonable in view of the efforts put forth by Ms. Frelow's counsel in preparing this case at both the trial and appellate levels.

CONCLUSION
The hearing officer was clearly wrong and manifestly erroneous in finding that a work-related accident did not occur within the contemplation of the workers' compensation statute. It clearly did. Accordingly, we reverse the hearing officer's judgment and enter judgment in favor of the plaintiff-claimant, Betty Frelow, awarding her temporary total disability benefits in the amount of $206.80 per week from August 6, 1992 and continuing until she is no longer disabled. Ms. Frelow is also awarded statutory penalties of 12% on all unpaid medical expenses and compensation installments from August 6, 1992 and attorney's fees of $10,000.00.
All costs in the proceedings below and on appeal are assessed to the defendant, Jeanerette Mills.
REVERSED AND RENDERED.