BOWES, Judge.
Claimant, Christopher Mack, appears in proper person to appeal the decision of the hearing officer denying to him benefits under the worker’s compensation laws. We reverse and remand for further proceedings.

FACTS

Plaintiff filed for worker’s compensation benefits for an on-the-job accident which he avers occurred on April 19, 1992. While engaged in his occupation of loading pallets for his employer Imperial Trading Company, he maintains that he pulled or injured his back, experiencing a sharp pain. He says that at that time he told Elton Hill, a coworker, that he had injured his back and then went home. On the following morning, he was unable to get out of bed and sought medical attention. He claims disability from that hdate, and that his employer has never paid compensation benefits. The employer disputed his claim that an accident occurred, and plaintiff filed his disputed claim in the Office of Worker’s Compensation. The following litigation ensued.

COMPENSATION HEARING

At the outset of the hearing, plaintiff-appellant requested a continuance in order to obtain the testimony of Elton Hill, the employee to whom claimant reported his injury on the night he was hurt. Mr. Hill was no longer employed by Imperial and his name was unknown to the plaintiff until the month before trial. The record shows that Hill was subpoenaed, by plaintiff but no return on the subpoena was available and Hill was not present at trial. The request for a continuance was denied.
The deposition of Dr. Robert Mímeles, an orthopedic surgeon, was admitted into evidence in lieu of testimony. Dr. Mímeles testified that Mr. Mack was referred to him by St. Jude Hospital, where Mr. Mack had initially sought emergency treatment on the day following the accident. He did not know *538 who authorized treatment, or who paid the medical bill.
According to the history given to Dr. Mi-meles by claimant, Mr. Mack had no problems with his back prior to the work-related injury. When he saw Dr. Mimeles, his problems were in his lower back; he had some pain with flexion extension and bending. Straight leg raising was negative; there were no motor deficits and x-rays were normal, with nojjbony abnormalities. Dr. Mimeles diagnosed a lumbar strain, gave him a muscle relaxant and some pain-killing medication, and asked claimant to return.
Mr. Mack did return five days later complaining the pains were worsening and now were radiating down both legs. There was pain with any attempt of flexion and bending, which facts Dr. Mimeles would not have expected with a soft tissue injury. There were complaints of pain with finger pressure on the back, which the doctor, reading from his notes, considered “questionable.” When asked about his truthfulness, Dr. Mimeles stated: “Was he truthful? I try not to get into all of that” — although he did not think the finger pressure should have caused complaints of pain. (However, we take note of the fact that Dr. Mimeles twice stated that he did not specifically remember plaintiff).
A CAT scan was ordered, and was performed on May 1,1992. Dr. Mimeles felt the test results were normal and, on May 4,1992, released Mr. Mack from his care. At that time, the physician felt “we were not heading in the right direction.” Despite claimant’s continued complaints, he had no ruptured disc, no pinched nerve, and no bony abnormality. He usually told patients in these types of cases that if they still had complaints, to ask the employer to get a second opinion.
On cross-examination, Dr. Mimeles stated there could be several causes for radiating pain, such as mechanical pressure or a stretch injury. If Rclaimant had come to him a month later and continued to complain of pain, he would have ordered an MRI to see how it correlated with the CAT scan, although he had seen no reason to do so when he discharged Mr. Mack.
While the deposition stated that medical reports from Dr. Mimeles were attached, including one dated May 15,1992, the record on appeal does not include them.
Other medical information admitted into evidence at the hearing included a report issued by Dr. Arthur Blamphin, who examined claimant for evaluation for Social Security benefits on September 14,1992, about five months after the accident. Dr. Blamphin reported that plaintiff related an on-the-job back injury in April 1992. Following his examination, a lumbar sacral strain with ridi-culopathy of the left lower extremity was diagnosed; as of that date, Dr. Blamphin felt that plaintiff was not physically able to work, and was advised to see another physician for diagnostic testing.
Dr. Henry Fitch, a chiropractor who treated claimant, entered a report that, in his opinion, claimant suffered from a central disc lesion which needed further treatment. However, since Dr. Fitch felt that there was nothing further that he could do plaintiff, Mr. Mack had been released from his care. However, we take note of the fact that Dr. Fitch stated: “I sincerely hope someone will listen to this man for he does have a legitimate problem.”
IsMedical records from the Medical Center of Louisiana at New Orleans (formerly Charity Hospital) evidenced that Mr. Mack was treated there. A report from that facility indicates that claimant gave the same history of a work accident. In November of 199S, he was examined and given pain medication and bed rest was ordered. In March of 1994, an MRI was taken indicating a normal result. The only diagnosis on these reports is “lumbar pain.”
Mr. Mack testified that on April 19, 1992, he was working in the bulk section, loading items on a pallet jack. Any one case could weigh between 30 to 60 pounds. He had sharp pains in his back and told another employee, Elton Hill (whose status as a supervisor is unclear), that he had hurt himself. He left the job early and went home. The next morning when he tried to get out of bed, he had difficulty doing so and went to St. Jude Medical Center. St. Jude’s contacted the company, who initially declined responsi *539 bility for payment. After St. Jude, claimant saw Dr. Mímeles, Dr. Fitch, Dr. Blamphin and physicians at the emergency room at the Medical Center of Louisiana (formerly Charity Hospital). He still goes there for physical therapy.
On cross-examination, Mr. Mack stated that he did not leave work early because his work was finished, but because he was in pain. However, in a deposition, Mack had stated that he was sent home because his work was finished. However, Mack explained what he really meant by these | ^statements by stating that if an employee finished his work early, he has to help the others, staying a full eight hours on the job. On the night he was hurt, he went home after completing his own load, and did not stay around to help others. “I left because I was in pain and as of that [sic] my work was finished.” Mack further stated that Dr. Mí-meles told him that he couldn’t find anything wrong, and that he could get a second opinion if he was in pain and wanted to do so, and also that he could go back to work if he felt that he could do it. However, he said he did not return to work because Dr. Fitch told him not to.
The deposition of Tom Anderson was admitted into evidence. Mr. Anderson was the former assistant warehouse manager on the night shift at the time of the accident. He agreed that the cases, which had to be lifted, could weigh up to 60 or 65 pounds. Mr. Anderson admitted that his memory of the night in question was “not real sharp,” but he recalled coming into the warehouse one night and being told that plaintiff had left his shift early. He did not remember having any further conversations with Mack, and did not remember an injury being reported to him.

JUDGMENT OF HEARING OFFICER

In its reasons for judgment, the trial court stated that there were no witnesses to the accident, and found that Mr. Mack had failed to carry his burden of proving there was an accident. The court cited Mack’s account of going home because of pain after telling his co-worker of his injury, and |?his second story that he went home because he had finished. The court had a problem in determining the truth of the accounts, asking “Where is the testimony of the co-worker he told of his injury?” (i.e., if given, why is it not in the record?) Giving Mr. Mack the benefit of the doubt, the court referred to Dr. Mímeles’ testimony that plaintiff had pain simply upon being touched on his back, adding:
When questioned as to the truthfulness of claimant’s injury, Dr. Mimeles declined to answer, stating he did not want to get involved in that. This Court however has a duty to confront this issue.

ANALYSIS

In Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992), the Louisiana Supreme Court held at 361:
... the plaintiff in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker’s testimony alone may be sufficient to discharge the burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent ‘circumstances casting suspicion on the reliability of this testimony.’ The trial court’s determinations as to whether the worker’s testimony is credible, and |8whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. [Citations omitted].
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find *540 manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). See also Penny v. Avondale Container Service, 93-966 (La.App. 5 Cir. 3/29/94), 636 So.2d 980.
In the present ease we cannot accept the credibility evaluation of the hearing officer under the circumstances of this case. We find that plaintiff provided a reasonable explanation as to the absence of his witness, Mr. Hill, to whom he claims to have reported the accident (see his explanation, supra). He had even subpoenaed Mr. Hill and he requested a continuance because of the absence of this witness, for purposes of establishing that the accident occurred. In addition, the record shows that defendant conceded that Hill was the person Mack told about the injury that night before leaving. Nevertheless, the trial judge (or hearing officer) denied the requested continuance as being “unnecessary.”
19We find that it is improper for the court to deny a continuance to obtain a subpoenaed witness who could corroborate plaintiffs vital testimony about the accident or his version of what he did and for the court to then find that plaintiff failed to prove that an accident occurred premised on the abuse of that witness. Further, any portion of the credibility finding of the hearing officer based on the cited statements of Dr. Mímeles we consider to be weak and doubtful considering the twice mentioned fact that Dr. Mí-meles did not specifically remember Mr. Mack, and the lack of any notation, or even utterance, indicating that the physician found claimant unworthy of belief. Added to the above, we are impressed with these facts:
That plaintiff sought emergency room treatment on the day following the accident and he was referred to Dr. Mímeles on the day after that; that his account to Dr. Mímeles, and to every subsequent treating physician has been consistent: that is, that he injured himself on the same date and in the same manner which he currently maintains was his work-related accident.
In Bruno v. Harbert Intern, Inc., 593 So.2d 357 (La.1992), the Supreme Court said:
... in Rosell, supra, we identified two factors that limit the deference due the trier of fact. In West, supra, we identified a third factor especially apt in compensation actions: ‘the appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact’s refusal to accept as credible uncontradict-ed testimony ... where the record indicates no sound reason for its rejection I ipand where the factual finding itself has been reached by overlooking applicable legal principles.’
[Emphasis supplied].
Mr. Mack’s testimony regarding the occurrence of the accident, was uncontradicted,[1] as explicated above, and we find there is no sound reason in the record for its rejection. The trial judge overlooked the legal principles enunciated in Bruno, supra; consequently, as authorized by Bruno, we are not bound by his credibility determination.
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). Indeed, it is well-settled in Louisiana that an ‘accident’ exists when ‘heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.’ Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959); Nelson, supra (collecting eases). Moreover, Louisiana courts view the question of whether there was an accident from the worker’s perspective. Bruno, supra.
[Emphasis supplied].
*541 We find that the claimant did carry his burden of proof, under the applicable legal standards, to satisfactorily prove at least a prima facie case that an accident occurred, and we hold that the trial judge erred and was manifestly erroneous in finding otherwise.
| nThe next crucial determination which must be addressed is whether or not plaintiff satisfactorily carried his burden of proof to prove that he was disabled, an issue which the trial court did not reach. On this point, the employer introduced the deposition of Dr. Mímeles in which the doctor, reading from his notes or reports (which were not made part of the record), stated that plaintiff was released to return to work. No other medical records or reports of any kind were submitted. In fact, the only other evidence submitted by the employer was the deposition of Mr. Anderson, and excerpts from the deposition of Mr. Mack.
On the other hand, plaintiff testified that following his discharge by Dr. Mímeles, he was still in pain and he began to see the chiropractor Dr. Fitch two to three times a week and that the doctor began physical therapy and gave him pain medication. Plaintiff contacted his employer to attempt to have them pay for the treatments, but they consistently refused. The employer has continued to refuse all payment of medical treatment, although the record indicates the bills of Dr. Mímeles were paid by someone.
The compensation action was filed in November of 1992. Dr. Blamphin’s report, finding no objective symptoms but diagnosing lumbo sacral strain and declaring the plaintiff unable to work, was dated September, 1992, five months after the accident. The letter from Dr. Fitch stating that plaintiff had a legitimate problem (central disc lesion) was dated March 1993.
_[ig[T]he finding of disability within the framework of the worker’s compensation law is a legal rather than purely a medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the question of disability and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert makes upon the court. Jackson v. A.I.A, 646 So.2d 1088, 94-371 La.App. 5 Cir. 11/16/94, (La.App. 5 Cir.1994), citing DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1 Cir.1988), writ denied, 530 So.2d 568 (La.1988).
The totality of the evidence adduced at the trial of this matter persuades us to conclude that plaintiff satisfactorily proved, by a preponderance of the evidence, that he was, for purposes of worker’s compensation, disabled. The employee’s work accident is presumed to have caused his disability when the employee proves that: (1) before the accident, he had not manifested his disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and disabling condition. Walton v. Normandy Village Homes Ass’n, Inc., 475 So.2d 320 (La.1985); Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95), 654 So.2d 365.
Here, we find all three conditions for such a presumption present. Claimant stated to Dr. Múñeles that he had no problems prior to the accident | i8and there is no evidence of record to suggest otherwise and then it appears that the disability was total during the period he was treated by Dr. Múñeles.
Also, the unexplained failure of the employer to pay benefits for this period of time may subject it to penalties under La.R.S. 23:1201. However, these are questions of fact to be investigated and determined on a trial on the merits following this remand.
In addition, giving due consideration to the record on appeal, it appears that the employer in the present case had the benefit of medical information, subsequent to the report of Dr. Múñeles, that there was the possibility of continuing disability. When *542 Mr. Mack began to receive physical therapy from Dr. Fitch and so notified the employer, and certainly when Dr. Blamphin declared him unable to work (all of which events occurred prior to the filing of this suit), it appears that Imperial was on notice that the diagnosis of the first physician was, at the very least, contested by the employee.
It is not clear, from the record, why the employer, Imperial, has refused to pay any compensation benefits whatsoever, including the three weeks in which Mr. Mack was treated by Dr. Mimeles. Imperial produced no records of any kind to indicate that any benefits paid by it were on behalf of plaintiff. However, the questions of whether Imperial was arbitrary and capricious, and the extent of which penalties, if any, and how much, if any, are questions to be determined on remand.

^iJDECREE

For the foregoing reasons, the judgment of the Hearing Officer of the Office of Worker’s Compensation is annulled and set aside, and in view of the above findings, the case is remanded to the Office of Worker’s Compensation for further proceedings in accordance with this opinion. Appellee, Imperial Trading Company, is assessed all costs incurred in this litigation in the trial court and this Court.
ANNULLED AND SET ASIDE AND REMANDED.
DUFRESNE, J., concurs with written reasons.

. Mr. Anderson, the supervisor, had no recollection except that claimant was not at work as expected.