BAGNERIS, Judge.
STATEMENT OF THE CASE
On June 24, 1997, Daniel Urman (hereinafter “Mr. Urman”) was injured while employed with Freeman Decorating Company (hereinafter “Freeman”). His injuries consisted of an ankle sprain with complications of tendinitis synovitis, effusion and impaired range of motion. He began receiving workers’ compensation payments approximately one week after the accident. However, in September 1997, Mr. Urman’s workers’ compensation payments were terminated. On October 2, 1997, he contacted Joseph G. Albe (hereinafter “Mr. Albe”), an attorney, to handle his workers’ compensation claim.
On October 6, 1997, Mr. Albe sent a letter to the Louisiana Department of Labor, Office of Workers’ Compensation requesting that a disputed claim be filed on behalf of Mr. Urman. On October 15, 1997, Mr. Albe sent a letter on behalf of Mr. Urman, demanding payment of benefits under the Workers’ Compensation Act, to the Caldwell Group, the workers’ compensation processors/insurance. The Caldwell Group responded to Mr. Albe’s letter on October 21, 1997 and informed him that their reason for terminating Mr. Urman’s benefits was the result of his 12failure to keep two doctor’s appointments with the doctor of the employer’s choosing.
*581 On January 8, 1998, Mr. Albe, Mr. Ur-man, and Dawn Byrne, a representative of Freeman Decorating Company attended a mediation held at the Office of Workers’ Compensation. Mr. Urman was informed at the mediation that he could choose a psychiatrist for the mental problems he was experiencing. Mr. Urman agreed to go and see a Dr. Scrignar. Mr. Albe scheduled the appointment. Dr. Scrignar treated Mr. Urman; however, he did so prior to seeking approval from Mr. Urman’s workers’ compensation carrier. Afterwards, when Dr. Scrignar sought payment from the workers’ compensation carrier, it was denied. Dr. Scrignar subsequently contacted Mr. Albe’s office regarding the bill wherein Mr. Albe sent a letter to the insurance company and their attorneys requesting authorization and payment of Dr. Scrignar’s bill.
On February 12, 1998, Mr. Urman received a check in the amount of $4,756.67 from Mr. Albe, consisting of $3,945.84 for payment of back-due benefits and $2,000.00 representing payment of penalties minus $1,189.17 in attorney fees for Mr. Albe’s representation in this matter. Thereafter, on March 10, 1998, Mr. Albe filed a Motion for Authorization to Collect Attorney Fees with the Office of Workers’ Compensation. The Order was granted, authorizing Mr. Albe to collect the $1,188.33 in attorney fees, which he already had in his possession.
On March 17, 1998, Mr. Albe received a letter from Mr. Ruli, attorney for Freeman, that it was Freeman’s position that Mr. Urman had already exercised his choice of psychiatrist when he chose Dr. Rynning. Thus, Freeman would not authorize or pay for Dr. Scrignar’s exam and/or treatment of Mr. Urman. A copy of this letter was forwarded to Mr. Urman. At that time, Mr. Urman was encouraged to see a psychiatrist of their choosing to ensure medical coverage.
pOn May 12, 1998, Mr. Urman, Mr. Albe, and Mr. Ruli attended a pre-trial conference was held at the Office of Workers’ Compensation. In this conference, Mr. Albe claimed that because Mr. Urman verbally attacked him, he would be filing a Motion to Withdraw as counsel of record.
On May 21, 1998, Mr. Albe filed a Petition of Intervention with the Office of Workers’ Compensation to recover attorney fees and cost incurred while handling Mr. Urman’s workers’ compensation case. However, the Petition of Intervention was dismissed after a compromise settlement was reached between Mr. Albe and Freeman. The settlement awarded Mr. Albe was $2,500.00 in additional attorney fees for his work on Mr. Urman’s case.
On November 16, 1998, Mr. Albe claims that Mr. Urman complained that he did not have the opportunity to oppose the collection of additional attorney’s fees. Moreover, Mr. Albe claims that he continued to receive dunning notices from Dr. Scrignar’s office requesting payment from Mr. Albe for Mr. Urman’s bill in the amount of $900.00. Accordingly, on November 25, 1998 Mr. Albe filed a Motion to Re-Open Intervention to address the issue of Dr. Scrignar’s medical bills before the court, as well as to give Mr. Urman an opportunity to voice his objections to the attorney fees.
On February 11, 1999 the trial court held that Dr. Scrignar’s bill of $900.00 should be adjusted to $450.00, or the amount for such services as provided in the Workers’ Compensation Fee Schedule, whichever is less, for the services Dr. Scrignar provided to Mr. Urman. Also, the trial court ruled that Mr. Albe was to be responsible for this bill. Additionally, the trial court denied Mr. Urman’s request for reimbursement of attorney fees in the amount of $1,189.17 from Mr. Albe. This appeal followed.

\ ¿DISCUSSION

The scope of appellate review for workers’ compensation cases is the same as that which is applicable to district court findings. Therefore, jurisprudence clearly *582 establishes that in workers’ compensation cases, the appropriate standard of review to be applied by the appellate courts is the “manifest error-clearly wrong” standard. Alexander v. Pellerin Marble & Granite, 630 So.2d 706 (La.1994). The hearing officer’s finding of fact is not to be set aside by the court of appeals unless those findings are clearly wrong/manifestly erroneous in light of the record reviewed in it entirety. Courville v. Omni Drilling, 96-174 (La.App. 3 Cir. 7/10/96), 676 So.2d 861, writ denied 683 So.2d 276 (La.1996). The reviewing court must give great weight to factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel its own evaluations and inferences are as reasonable. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992); Frelow v. Mills, 94-799 (La.App. 3 Cir. 12/7/94), 647 So.2d 475, writ denied, 650 So.2d 1180 (La.1995).
In order to determine whether trial court’s holding was manifestly erroneous, we must review the nature of the statute pertaining to attorney fees on workers’ compensation awards along with her decision.
LSA—R.S. 23:1141 provides' in relevant part:
A. Claims of attorneys for legal services arising under this Chapter shall not be enforceable unless reviewed and approved by a workers’ compensation judge. If so approved, such claims shall have a privilege upon the compensation payable or awarded, but shall be paid therefrom only in the manner fixed by the workers’ compensation judge. No privilege shall exist or be approved by a workers’ compensation judge on injury benefits as provided in LSA.—R.S. 23:1221(4)(s).
B. In no case shall the fees of an attorney who renders service for an employee coming under this Chapter exceed twenty percent of the | ¿first twenty thousand dollars and ten percent of the part of any award in excess of twenty thousand dollars.
Mr. Albe filed a Motion for Authorization to Collect Attorney Pees with the Office of Workers’ Compensation on March 10, 1998. The Order was granted, authorizing Mr. Albe to collect the $1,188.33 in attorney fees he already had in his possession. Moreover, he properly filed a Petition of Intervention with the Office of Workers’ Compensation to recover additional attorney fees when his representation of Mr. Urman ended so abruptly. Accordingly, Mr. Albe contends that he provided advance notice to Mr. Urman that such motions were going to be filed with the Office of Workers’ Compensation, and that whatever prior arrangements or concessions they had agreed to expired at the withdrawal of his tenure as attorney of record in this case. Mr. Albe subsequently dismissed his intervention petition after reaching a compromise settlement with Freeman, whereby he was awarded $2,500.00 in additional attorney fees for his work on this case.
Alternatively, when Mr. Urman learned of Mr. Albe’s award of additional attorney fees, he filed this Petition for reimbursement of the attorney fees he had already paid to Mr. Albe, in the amount of $1,189.17.
We find that Mr. Albe’s procurement of statutory legal fees and additional attorney fees associated with Mr. Urman’s case were properly acquired in accordance with LSA-R.S. 23:1141. In both instances, Mr. Albe sought and received approval to collect these fees from the Office of Workers’ Compensation. Moreover, when this issue was presented, the trial court affirmed the validity of the attorney fee awards, although the trial court had the ability to modify any prior Orders of the Office of Workers’ Compensation that she felt to be overly excessive or unwarranted. Notwithstanding, the trial court stated in its holding that “the fees collected by Mr. *583 Albe, approved by the court, which the court finds were [^reasonable under the circumstances — 20% of amount recovered and a statutory attorney for arbitrary and capriciousness which was paid separately by the defendant (Freeman), and as such claimant (Mr. Urman) is not entitled to a reimbursement of any fees his attorney has collected under the Workers’ Compensation Act.” We agree. Moreover, we find that Mr. Albe’s attorney fee award, $1,189.17 did not exceed by twenty percent the full award, $5,945.84, that Mr. Urman ultimately received. Thus, we affirm the judgment of the Workers’ Compensation court.
AFFIRMED.