hGREMILLION, Judge.
The defendant, International Maintenance Corporation (IMC), appeals the judgment of the workers’ compensation judge finding the plaintiff, Detra Brawley, temporarily totally disabled as a result of a work-related accident. We affirm in part and reverse in part.
FACTS
Brawley alleged that she suffered an injury to her lower back after picking up and moving a fire extinguisher while performing a fire watch for IMC on February 13, 1997. She was examined in the emergency room of the West Calcasieu Cameron Hospital (Cal-Cam Hospital), where her condition was diagnosed as a lumbar strain, and released to light duty. She returned to work several days later and was placed in a light-duty position. However, she was released from her employment several days later as part of a reduction in force.
Un April 1997, Brawley sought authorization to obtain medical treatment from IMC’s insurer, Crawford and Company, due to continuing problems with her lower back. After investigating Brawley’s claim, Crawford disputed the occurrence of an accident and denied her claim for workers’ compensation benefits. Brawley filed a disputed claim for compensation seeking benefits and penalties and attorney’s fees due to IMC’s arbitrary and capricious actions in denying her claim. Following a hearing on the merits, the workers’ compensation judge rendered written reasons finding that Brawley was injured as the result of a work-related accident and awarded her temporary total disability benefits. Brawley’s claim for penalties and attorney’s fees was denied. A judgment was rendered in this matter on July 20,1998. IMC appeals this judgment.
ISSUES
IMC raises two assignments of error on appeal. It alleges that the workers’ compensation judge erred in finding that Brawley presented sufficient evidence to prove that she suffered an accident and was entitled to temporary total disability benefits.
WORK-RELATED ACCIDENT
In order to recover workers’ compensation benefits, a worker must first prove that she suffered an injury by an accident arising out of and in the course of her employment, La.R.S. 23:1031(A). An accident is defined as an “unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive 1 sdegeneration.” La.R.S. 23:1021(1).
Although the Workers’ Compensation Act is construed liberally in favor of the worker, the worker’s burden of proof is not relaxed. Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992). This burden of proof requires the worker to establish, by a preponderance of the evidence, that a work-related accident occurred. Burns v. Beauregard Nursing Cent., 94-131 (La.App. 3 Cir. 10/5/94); 643 So.2d 443. The worker’s testimony alone may be sufficient to satisfy this burden, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. Corroboration may be proved by the testimony of fellow workers, spouses, other close family members, friends, or the introduction of medical evidence. Id. A trial court’s determinations with regard to the credibility of a witness and the discharge of a party’s burden of proof are factual in nature and will not be disturbed in the absence of manifest error. Bruno, 593 So.2d 357.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the *1102 variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (citations omitted).
| ¿After reviewing the evidence and the appropriate law, the workers’ compensation judge held that Brawley satisfactorily proved by a preponderance of the evidence that her injuries were the result of a work-related accident. She based her finding on Brawley’s testimony concerning the occurrence of her injury and the corroborating evidence provided by her mother and the medical records of Cal-Cam Hospital and Dr. Carl Hines. Although she noted that there was conflicting testimony from coworkers concerning whether Brawley moved the fire extinguisher, the workers’ compensation judge held that it did not cast serious doubt on Brawley’s version of what occurred. She stated that she “evaluated claimant’s demeanor and found claimant’s explanations sufficient to carry her burden. Claimant’s testimony was further corroborated by circumstances following the event — the testimony of claimant’s mother and the medical evidence.”
The parties stipulated that Brawley was within the course and scope of her employment on the date of the alleged accident. Brawley, who began working for IMC on February 7, 1997, testified that her back began hurting after she moved a fire extinguisher and a water hose from the safety tent to her assigned area and stood around for several hours waiting for the welders to begin working in her area. She stated that she obtained the fire extinguisher from the safety tent at approximately 7:00 p.m. She stated that the safety tent was located seventy-five yards from her assigned area. She noticed that her back was hurting while she moved the extinguisher and then afterwards while standing around. Brawley stated that the welders did not begin working in her area until after the first break, at approximately 10:00 p.m. After the break at 9:00 p.m., she testified that she told her boyfriend, [ ^Robert Johnson, that she could not make it through her shift due to back pain and, that after the lunch break, 12:00 a.m., that she needed to go home. By that time, she stated that she was crying because of the pain.
Brawley testified that when they “ear-lied out,” she waited outside while Johnson signed them out. When questioned in her deposition about the night she was hurt, she stated that she was pretty sure that both she and Johnson went into the field office to sign out and that there were two men in the office at that time: the one who drove them to the gate and a safety supervisor. When questioned about the discrepancy in her testimony, Brawley stated that she had earlied out two different times that week and that she might have been testifying in her deposition about the night she was laid off. When questioned about her steel-toe boots, she stated that they were the correct size and that she had owned them for approximately eleven months at the time of her accident. In her deposition, she testified that they were one and a half to two years old. With regard to this discrepancy, Brawley stated that she was not certain when she bought her boots. She stated that they did not give her any trouble other than making her feet tired now and then.
Although she told only her supervisor that her back hurt when she and her boyfriend signed out after lunch, Brawley reported her injury the next day to Royce Yellot, the site safety superintendent, and *1103 filled out an accident report listing the cause of accident as moving a fire extinguisher and standing around for several hours. After being released to light duty by the emergency room doctor, Brawley testified that she went home and went to bed. Five days later, she stated that she was able to move around, even though her back and legs still gave her trouble. She | ¿returned to work and was given duties which required her to sit down her entire shift. She testified that she was laid off by IMC the next day. The next day, she took the bus to Abilene, Texas, to attend her great-grandmother’s funeral. This was a twelve-hour trip from Beaumont, Texas, including layovers.
Brawley testified that she never told anyone at IMC that she had prior back problems or that she had undergone back surgery, nor did she recall anyone asking either her or Johnson if her back pain was work related. Brawley testified that she did not see a doctor until April 1997, and that her mother called Crawford concerning authorization for her to see Dr. Hines. She stated that she did not attempt to obtain approval from Crawford for medical treatment because she was unaware that she could. When questioned about being laid off, Brawley stated that she did not ask to be, laid off so she could travel to Abilene. She denied incurring any further injuries to her back after being laid off.
Evelyn Medor, Brawley’s mother, testified that she lived with her daughter before and after her accident. She stated that after the accident Brawley was in pain as a result of her back injury and was unable to do the things she normally did before injuring her back.
IMC introduced the testimony of several current and former employees in an attempt to disprove the occurrence of a work-related accident. Perry Taylor, a former employee, stated that he and several other employees were in the field office when Brawley and Johnson arrived to sign out. When Johnson told them that Braw-ley’s back was hurting, Brent Fuselier, an IMC employee, asked if it was work related. Taylor testified that Johnson replied that it was not and that her back was 17hurting before she arrived at work. He also testified that he showed Brawley where she would be working that shift at around 9:00 p.m., and that there was work ongoing before her shift began.
Don Schexneider, another former employee, testified that Brawley began her shift at approximately 9:00 p.m., taking the place of another employee who was leaving early. He stated that since a “hot permit” had already been issued at the beginning of that shift for work at that location, a fire extinguisher and water hose were already present when Brawley arrived.
Bill Burch, the superintendent for the turnaround on the “alki” unit at the Cono-co refinery in February 1997, testified that he was in the field office when Brawley and Johnson came in to sign out. He stated that Johnson reported that Braw-ley’s back was bothering her and that they were going to “early out.” Burch also explained that hot permits are reissued at the beginning of every shift, and that fire extinguishers are usually left on the job site while work is being performed. He stated that work was ongoing at the D86 drum where Brawley was assigned that night. Burch stated that D86 was approximately twenty-five to thirty yards from the labor tent. Once a job is finished, Burch testified that the fire extinguisher is picked up by employees in clean-up and taken back to the shed.
Fuselier testified that his job duties on February 13, 1997, included planning and scheduling. He stated that he was in the field office when Brawley and Johnson came in to early out at 12:00 a.m. He stated that they reported she was not feeling well and, when he jokingly asked if the reason were work related, Johnson replied that it was not. Fuselier also reported that he drove Brawley and Johnson to |sthe parking lot, and that while doing so, he overheard Johnson talking to her about her boots being too small and her back hurting because she had been standing on *1104 her feet too long. Fuselier stated that Johnson mentioned that Brawley had back trouble/surgery earlier in the year, but neither mentioned that her current problem was work-related. He did not recall either of them mentioning that a fire extinguisher was involved in causing her injury. The parties stipulated that had Bill Vigo testified, his testimony would have been the same as Fuselier’s with the exception of what was overheard during the ride to the parking lot.
Yellot testified that he became aware of Brawley’s injury the day after it occurred, when she called and requested to see a doctor. He stated that he told her that she first had to fill out an accident report before approval would be given to see a doctor. At that time, he stated that she did not explain how she hurt her back. Yellot testified that she filled out the report, but left blank the question concerning the cause of her accident. When he informed her that the question had to be completed, he stated that she wrote that the cause was walking, possibly standing on her feet, or carrying a heavy object. Yellot testified that she seemed unsure, but that she thought her injury was caused by standing on her feet all night or picking up a fire extinguisher.
After reviewing the testimony and the evidence presented, we cannot say that the workers’ compensation judge was unreasonable in finding that Brawley proved by a preponderance of the evidence that she was injured as a result of a work-related accident. The workers’ compensation judge noted that there was testimony which contradicted Brawley’s evidence, but still held she satisfied her burden of | aproof. This decision was based on a finding that Brawley was credible, and, since “credibility calls are the function of the trial court,” we cannot say that her decision was clearly wrong. Bruno, 593 So.2d at 364. As the finder of fact, the decision of the workers’ compensation judge demands great deference and will be affirmed. This assignment of error is without merit and is dismissed.
TEMPORARY TOTAL DISABILITY BENEFITS
In its second assignment of error, IMC argues that the workers’ compensation judge erred in finding that Brawley proved by clear and convincing evidence that she is temporarily totally disabled as a result of this accident. We agree.
An employee is entitled to temporary total disability benefits if she proves by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment, including but not limited to employment while working in pain. La.R.S. 23:1221(l)(c); Boutte v. Langston Cos., Inc., 97-972 (La.App. 3 Cir. 2/4/98); 707 So.2d 1315.
The only medical testimony in the record is from Dr. Hines, Brawley’s treating physician. A June 12, 1997 letter from him states that he first examined her following her accident on April 18, 1997. X-rays taken that day revealed that she was suffering from lumbosacral disc disease. Dr. Hines prescribed pain medication and a muscle relaxant. Brawley returned to Dr. Hines on May 5, 1997, complaining of back and hip pain. He recommended that she continue the pain medication and do exercises for her back. On June 18, 1997, Dr. Hines wrote a letter which stated that Brawley did not have any scars on her back, and that she had not undergone any type of Imback surgery. He reiterated that she was suffering from lumbosacral disc disease as a result of her February 13, 1997 work-related injury. Brawley testified that she was seen by Dr. Hines eight or ten times; however, there are no other medical records or reports in the record.
When questioned about her alleged disability, Brawley’s testimony was restricted to her condition immediately after her accident. She testified that when she returned to work she did not feel capable of performing the same duties she did before suffering her injury. There is no testimony or evidence concerning her present condition. Dr. Hines made no recommen *1105 dation with regard to restrictions or limitations to be placed on her ability to work. Considering the totality of the evidence, we find that the workers’ compensation judge erred in finding that Brawley proved by clear and convincing evidence that she is currently unable to engage in any employment or self-employment, including but not limited to employment while working in pain.
In its brief, IMC argues that it placed Brawley in a light-duty position after her injury which was terminated only upon her request to be laid off so she could travel to-Texas for her great-grandmother’s funeral. It points to the fact that her great-grandmother died the morning she was laid off and she left for Texas the next day to validate this theory. Brawley denied that she requested the layoff, and none of IMC’s witnesses verified that she was laid off at her own request. It has not been proven that Brawley was laid off at her own request. Since this finding would touch on the issue of Brawley’s entitlement to supplemental earnings benefits, we remand the matter to the workers’ compensation judge for further proceedings on this issue. InThe judgment of the workers’ compensation judge on the issue of temporary total disability benefits is reversed.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed insofar as it finds that a work-related accident occurred, but is reversed with regard to the award of temporary total disability benefits. We remand for a determination of Brawley’s entitlement to supplemental earnings benefits. The costs of this appeal are assessed to the defendant-appellant, International Maintenance Corporation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
AMY, J., concurs in part and dissents in part and assigns reasons.