832 So.2d 1157 (2002)
Pam MURPHY
v.
BROOKSHIRE GROCERY COMPANY.
No. 02-808.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
*1159 Glynn Shelly Maturin, II, Esq., Galloway & Jeffcoat, Lafayette, LA, for Plaintiff/Appellee, Pam Murphy.
Charles J. Foret, Briney & Foret, Lafayette, LA, for Defendant/Appellant, Brookshire Grocery Company.
Court composed of HENRY L. YELVERTON, OSWALD A. DECUIR, and ELIZABETH A. PICKETT, Judges.
YELVERTON, Judge.
Brookshire Grocery Company appeals a workers' compensation judgment claiming that the trial court erred in finding that Pam Murphy did not violate Louisiana Revised Statute 23:1208 and in finding that she suffered a work-related accident. We find no error, and affirm.

FACTS
Murphy went to work for Brookshire at the Super 1 grocery store in Lafayette in August 1998 as a cashier. On April 10, 2001, she was helping out in the bakery department because someone was on sick leave. She was the closing person and was in the process of cleaning the area. She picked up a cookie cutting machine and placed it in the dishwasher. As she did, she felt something pull and burn in her neck.
She told David Boudreaux, the grocery manager, about the incident. Murphy then went on break. Murphy explained that she thought she had pulled a muscle and that the pain would get better, but it only got worse as the days went by. She finally saw Dr. Richard Feucht on April 23, 2001, after she aggravated the problem by pulling on a bag of dog food while checking out a customer. Her last day to work was May 23, 2001, when an MRI revealed that she had a herniated disc, so she was placed on light-duty status. The store did not have a position for her that was light-duty at the time.
Initially, Murphy received workers' compensation benefits, but Brookshire terminated these benefits in July 2001, after approximately eight weeks. Murphy then filed the present claim. The trial court found that Murphy proved that she suffered a work-related accident, and that as a result, she was entitled to temporary, total disability benefits and reasonable and necessary medical expenses.

SECTION 1208 VIOLATION
Brookshire first argues that the trial court erred in finding that Murphy did not violate Louisiana Revised Statute 23:1208 which provides in pertinent part:
A. It shall be unlawful for any person for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
*1160 ....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
"The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." Resweber v. Haroil Const. Co., 94-2708, p. 7 (La.9/5/95), 660 So.2d 7, 12. "The issue of whether an employee forfeited his workers' compensation benefits by willfully making false statements in order to obtain benefits is one of fact, which is not to be reversed on appeal absent manifest error." Bibbins v. Sonny's Pizza, Inc., 01-1524, pp. 4-5 (La.App. 1 Cir. 6/21/02), 822 So.2d 79, 82.
Brookshire alleges that Murphy lied on two separate occasions when she gave a deposition about the events surrounding a 1997 vehicular accident. It claims that she lied when she denied being hurt in the vehicular accident and when she stated that she never hurt her neck before. Although the workers' compensation judge did not specifically rule on the when a judgment is silent as to an issue, forfeiture issue, it is well established that a when a judgment is silent as to an issue, the issue is considered rejected. Baker Hughes, Inc. v. Ardoin, 99-1217, 99-1218 (La.App. 3 Cir. 2/2/00), 758 So.2d 830, writ granted in part on other grounds and denied in part, 00-681 (La.4/20/00), 759 So.2d 771. This is especially true since the judgment was in Murphy's favor. Therefore, we will review the evidence to determine whether the workers' compensation judge was clearly wrong in finding that Murphy did not forfeit her right to benefits.
Murphy never denied that she was involved in a vehicular accident in 1997. However, she did state that she never injured her neck before. Medical records indicate that Murphy went to the hospital after the wreck complaining of neck and back pain. Furthermore, a suit filed on behalf of Murphy for the accident demanded damages for injuries.
When asked at trial to explain her denial, Murphy testified that she did not think that a whiplash was an injury. The record reveals that Murphy was very forthcoming about the fact that she was in an accident and never tried to conceal this fact. While it appears that Murphy may have had a neck problem following the wreck, there is no evidence in the record to indicate that these problems continued past a few months after the accident. It is understandable that Murphy perceived that a whiplash would not qualify as the type of injury that the attorney was asking her about. As can be seen from her testimony in this case, she also thought that the neck problems from the present incident would resolve and were not serious. We do not find that the workers' compensation judge was clearly wrong in finding that Murphy's answers were not willful, but probably more in the line of a misunderstanding as to whether whiplash would qualify as an injury. Furthermore, the workers' compensation judge found Murphy to be a credible witness which we will explain further in the next section.

ACCIDENT
Brookshire alleges that even if we do not find that Murphy forfeited her right to receive benefits, that the workers' compensation judge erred when she found *1161 that Murphy sustained a work-related accident despite the substantial evidence which cast serious doubt upon her version of events.
Proof of an accident must be by preponderance of the evidence, and a claimant's testimony alone may be sufficient to discharge this burden, provided two elements are satisfied. First, no other evidence must discredit or cast serious doubt upon the claimant's version of the incident, and second, his testimony must be corroborated by circumstances following the alleged incident. Bruno v. Harbert Intern.., Inc., 593 So.2d 357 (La. 1992); Honeycutt v. Elbert Walker Construction, 01-1291 (La.App. 3 Cir. 2/6/02); 815 So.2d 1011. Corroboration of the claimant's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Bruno, 593 So.2d 357. Barring circumstances that cast suspicion on the reliability of the claimant's uncontradicted testimony, the trial court should accept the testimony as true when determining whether he has discharged his burden. Id; Honeycutt, 815 So.2d 1011. These determinations are factual in nature and will not be disturbed unless clearly wrong or manifestly erroneous. Id.

Tate v. Cabot Corp., 01-1652, pp. 9-10 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 463.
Brookshire claims that the medical evidence casts serious doubt upon Murphy's version of what occurred, buttressed by the fact that her credibility is at issue. Brookshire speculates that the reason for this finding is that the workers' compensation judge did not review the medical evidence.
In ruling from the bench, the workers' compensation judge indicated that she had reviewed exhibits in the record that were introduced before trial and she recognized that there were some inconsistencies in the record. The judge based her ruling primarily on the testimony of Boudreaux, the grocery manager, that corroborated that a work-related accident occurred. She further found that Murphy was consistent in discussing both the vehicle accident and the accident at Super 1, and that in her mind a pulled muscle was not an injury, which was in accord with Boudreaux's testimony that he was reluctant to file an accident report when he did not feel that there was something obviously wrong. The workers' compensation judge then left the record open to review a surveillance video, which did not change her opinion, as explained in supplemental reasons for judgment.
Murphy testified that she called for someone to help her with the cookie machine, but no one ever came, so she lifted it herself to place it in the dishwasher. She explained that Boudreaux showed up later and she told him that she had already lifted the machine. She asked him if she could take a break because she felt like she pulled something in her neck and it was burning. He offered to fill out an accident report, and she told him she did not think that she was hurt but that she just suffered a pulled muscle.
Boudreaux confirms Murphy's testimony that she had been paging him but testified that he did not come because he was busy at the time. His testimony differs from Murphy's in that he claims she told him she needed help moving the machine because she tried and could not. He explained that he moved it from the sink to the dishwasher and that she mentioned she might have to fill out an accident report because of her neck. She then asked him if she could take a break.
*1162 Boudreaux also explained that he did not fill out an accident report because Super 1 does not like filling out accident reports unless someone is obviously hurt. He did not report the incident to anyone else.
Murphy testified that she continued working but the pain got worse each day. She finally went to see Dr. Richard Feucht at the Stafford Health Care Clinic on April 23, 2001, explaining that pulling a bag of dog food across the checkout counter had aggravated the condition. Dr. Feucht's records confirm this, even though the records were marked that it was not a work-related injury. She was referred for treatment at the Physical Therapy Clinic.
She saw Dr. Feucht again on May 23, 2001, with left-sided neck pain that was not improving. X-rays were taken which revealed spurring at C5 and some questionable disc space narrowing at C4-5, C5-6. It was recommended that she have an MRI. Dr. Feucht placed her on light duty at that time.
It was at this time that Murphy approached David P'Pool, apparently a manager at Super 1, and an accident report was filled out. Murphy approached P'Pool to request light-duty work as required by her doctor, but P'Pool informed her that he did not have anything available. This was the last day she worked. At this time she was placed on temporary total disability benefits which were discontinued in July, 2001.
She returned to the doctor on May 31, 2001, with continuing neck pain. An MRI was finally performed on June 20, 2001, which revealed a disc herniation at C4-5.
After reviewing the record, we agree with the workers' compensation judge that while there are some inconsistencies in the record, the record as a whole supports Murphy's explanation that she did suffer an accident, that she did not think it was a serious problem initially, and that she did not want to make a claim for workers' compensation until she realized how serious her neck problem was. We find that Murphy has proven by a preponderance of the evidence that she suffered a work-related accident which has resulted in disability.
For the above reasons, we find no error in the judgment of the Office of Workers' Compensation. The judgment is affirmed at Brookshire Grocery Company's costs.
AFFIRMED.