# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 04-172


EDWIN J. DUPUIS

VERSUS

PICARD STEEL ERECTORS, INC.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 02-07092
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**REVERSED.**

**Michael Keith Leger**
**DeJean & Leger, L.L.C.**
**806 S. Main**
**Opelousas, LA 70570**
**(337) 948-9066**
**Counsel for: Plaintiff-Appellant**
**Edwin J. Dupuis**

**Debra Talbot Parker**
**Johnson, Stiltner & Rahman**
**P. O. Box 98001**
**Baton Rouge, LA 70898-8001**
**(225) 930-0437**
**Counsel for: Defendant-Appellee**
**Picard Steel Erectors, Inc.**

**SANDERS, J.**

Edwin Dupuis was an employee of Picard Steel Erectors, Inc., when he allegedly suffered a work-related injury. He received workers' compensation benefits for a year and a half before they were terminated. On termination, he filed a 1008 claim. The Workers' Compensation Judge denied Mr. Dupuis' request based on La.R.S. 23:1208.1

**FACTS**

In 1982, mR. Dupuis suffered a work-related injury while employed with S&S Steel. This injury occurred when he fell twenty-four feet off a building. He received workers' compensation benefits for that injury for approximately 16 years. In 1997, he began constructing carports.

In August 2000, Mr. Dupuis and his wife, Tina, went to Picard Steel Erectors, Inc., where Mr. Dupuis applied for a job. Mrs. Dupuis testified that she completed the employment application due to Mr. Dupuis' limited educational background. The following day, Mr. Dupuis reported to work and at some point was given a medical questionnaire to complete. There is some dispute as to what form he was given and who completed the form. However, Mr. Dupuis did state that he signed a form provided to him by Jeff Picard, the owner of Picard Steel Erectors, Inc. The medical questionnaire contained a check mark in the "no" box for every medical condition listed.

In January 2001, a delivery driver of S&S Steel saw Mr. Dupuis at Picard Steel and asked Troy Thomasee, a supervisor, about Mr. Dupuis' previous injury and his overall health. Mr. Thomasee then told Mr. Picard of the delivery driver's comments. Mr. Dupuis stated that Mr. Picard asked him about the incident and, at

that time, he informed Mr. Picard of the prior accident and injury, but indicated that he was currently pain free. It appears that nothing was ever done in reference to the new information. The medical questionnaire was not revised, and Mr. Dupuis remained an employee.

Mr. Dupuis contends that on April 16, 2001, he suffered a back injury while manually pulling a bar joist, weighing 150-200 pounds, from the ground to the second floor. Somehow the rope slipped, causing a jerk in the claimant's back. It is unclear whether the other co-workers knew of the injury immediately thereafter, but Mr. Thomasee, the supervisor, was informed that day or the following day. Mr. Dupuis continued to work the remainder of the day and the rest of the week. On the following Sunday night, Mr. Dupuis telephoned Mr. Thomasee and told him that he thought he needed to see a doctor. On Monday, April 23, 2001, Mr. Picard sent Mr. Dupuis to the emergency room. An accident report was completed by Picard Steel Erectors, Inc., on April 26, 2001, listing the date of injury as April 16, 2001. From April 23, 2001, the claimant saw several doctors for treatment, but was unable to return to work. He received workers' compensation benefits until June 12, 2002, when they were terminated.

**PROCEDURAL FACTS**

Mr. Dupuis became an employee of Picard Steel Erectors in August of 2000, and allegedly suffered a work-related back injury April 16, 2001. He received workers' compensation until June 12, 2002.

On January 10, 2003, the Louisiana Worker's Compensation Second Injury Board denied Louisiana Worker's Compensation Corporation's (Picard Steel

2

Erectors, Inc.'s worker's compensation insurer) claim for reimbursement from the second injury fund. On February 7, 2003, they appealed the board's decision.

On August 5, 2003, the claimant filed a 1008 requesting back indemnity compensation, weekly indemnity benefits, medical benefits, penalties, attorney fees and costs. The Workers' Compensation Judge denied the claimant's request based on La.R.S. 23:1208.1. Edwin Dupuis timely filed a devolutive appeal on October 23, 2003.

**ASSIGNMENTS OF ERROR**

1) The Workers' Compensation Judge erred in finding a violation of LSA-R.S. 23:1208.1 forfeiting benefits and failing to award workers' compensation benefits to the claimant in the form of weekly indemnity benefits and medical benefits.

2) The Workers' Compensation Judge erred in failing to award penalties and attorneys fees to the claimant based on the defendant's handling of the claim.

**LAW AND ANALYSIS**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La. 1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La. 1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

3

**ASSIGNMENTS OF ERROR NUMBER ONE**

The claimant's first assignment of error concerns the application of La.R.S. 23:1208.1, which provides:

> Nothing in this title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

The Louisiana Supreme Court discussed La.R.S. 23:1208.1 in detail in *Nabors Drilling USA v. Davis,* 03-0136 (La. 10/21/03), 857 So.2d 407. Davis had suffered an injury to his right shoulder and right knee in 1994 and surgery was performed in September 1994. In 2000, Davis began working for Nabors and completed a medical questionnaire. He responded negative to specific questions about surgery and injury incurred at work. On November 14, 2000, he suffered a back and leg injury. The employer argued that Davis' failure to truthfully answer the question resulted in a loss of benefits.

The court stated, "La.R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute." *Id.* at 414. The court did not focus on the claimant's untrue statement but on whether it prejudiced the employer. "Thus, it is not every untruthful statement on a medical

4

history questionnaire that will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. It is only those statements that rise to the level of meeting the statutory proviso of La.R.S. 23:1208.1 that will subject the employee to forfeiture." *Id*. at 414-15.

For there to be prejudice to the employer, "the untruthful statement must 'directly relate "[]" to the medical condition for which a claim for benefits is made', or it must affect the employer's ability to receive reimbursement from the second injury fund." *Id.* at 415. The question before the court today is whether the employer has been prejudiced. It is uncontested that on hiring, the defendant did not know of the plaintiff's previous injury. Also uncontested is that in January 2001, prior to the alleged subsequent injury, the employer was put on notice by the delivery driver's discussion of Mr. Dupuis' previous injury.

The Workers' Compensation Judge stated in her ruling, "I think that the form has the requisite notice, has several notices on several different pages. I think the condition directly relates to the injury today, and I think also there's clear evidence of prejudice with the second injury fund. I think it's a 1208.1 case. That's my ruling today."

The fact that one can find a false statement violation in La.R.S. 23:1208.1 does not automatically prohibit workers' compensation benefits. The Workers' Compensation Judge incorrectly found that the employer had been prejudiced when the employer knew of the previous injury and failed to take corrective measures. The Workers' Compensation Judge did not discuss the fact that the delivery driver told Mr. Thomasee about the claimant's injury, nor the fact that the owner, Jeff Picard,

5

discussed the injury with the claimant and retained the claimant as an employee. Also, the Workers' Compensation Judge did not discuss the fact that the defendant made an affirmative assertion in its application to the second injury fund that they had notice of the previous injury.

The second prong of the *Nabors'* test is that the purpose of this provision is to allow the employer to put the second injury fund on notice of the prior injury so as to be able to access that fund if it later becomes necessary. Therefore, if the employee does not tell the employer of the previous injury, the employer is prejudiced and unable to access the second injury fund. In that case, loss of compensation serves not only to punish the employee but, more importantly, as a protection for the employer. However, once the employer has knowledge of the previous injury and has the opportunity to correct the misinformation, then any prejudice caused by the employee's failure to disclose is negated, as the employer is made whole and given the opportunity to put the second injury fund on notice. Moreover, once the employer knows, he can reassess the working conditions and make any appropriate accommodations. It is thus fair to say that the newly acquired knowledge puts the employer in the same position that he would have been in if he had been given accurate information originally.

At this point, if the employer does not act on the newly acquired information, it is his own failure to act that prejudices him and not the employee's misinformation. Therefore, the final prong addressing the employer's ability to recover from the second injury fund is not met, as the employer had notice, ample time, and the ability to protect itself by giving the second injury fund notice. Accordingly, equity dictates

6

that the employer should suffer from his act of omission and not the employee. To hold otherwise would put the employee in the position of being forever barred from workers' compensation eligibility long after the employer has been apprised of the injury and the rationale for the forfeiture provision has been eradicated. Accordingly, we reverse the finding that the employer had been prejudiced under La.R.S. 23:1208.1.

The Workers' Compensation Judge did not render a decision as to whether an accident had indeed occurred, and if it did, whether that accident cause the claimant's injury. "When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential facts de novo." *Lasha v. Olin Corp.,* 625 So.2d 1002, 1006, (La. 1993)

Therefore, we must decide whether Mr. Dupuis did in fact, suffer a work-related accident and injury. "'Accident' means an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive deterioration." La.R.S. 23:1021(1).

On April 16, 2001, Mr. Dupuis was manually lifting a bar joist weighing 150-200 pounds when he felt a "jerk" in his back. Manually lifting the bar joist was an expected job duty when mechanical equipment was unavailable or unable to perform the job. If, indeed, Mr. Dupuis injured his back as described, this would be

7

considered an accident.

> Louisiana courts consistently have interpreted the work-related accident requirement liberally. Indeed, it is well-settled in Louisiana that an "accident" exists when "heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." Moreover, Louisiana courts view the question of whether there was an accident from the worker's perspective.

*Bruno v. Harbert Int'l. Inc.,* 593 So.2d 357, 360 (La. 1992) (citations omitted).

Although the court looks to see if an accident occurred from the worker's perspective, the worker still bears the burden of proving there was an accident:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubts upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. . . . Corroboration may also be provided by medical evidence.

*Id*. at 361.

Mr. Dupuis stated that he hurt his back when pulling on the rope to raise the bar joist. Not one of his co-workers contests this statement. No one disputes that Mr. Dupuis was engaged in raising the bar joist. One discrepancy is that Mr. Dupuis stated that Ronald Guidry had to help him with the beam, but Mr. Guidry said that he did not help him with the beam. However, the main discrepancy surrounds the timing of when he told his co-workers of his injury. It is important to point out that the co-workers' statements were taken approximately two years after the injury. Mr. Dupuis says that he told them then or shortly thereafter, whereas they say it was days later before they were aware that he suffered an injury. Mr. Guidry said he was told the next day or the day after. Mr. Thomasee says he was told later that same day or the next day. "[M]erely because a worker completes a day's work without reporting an

8

accident does not preclude the worker from receiving compensation." *Id.* at 362.

The co-workers all state that Mr. Dupuis was a good worker and that he was not a complainer, therefore, it is reasonable that he may not have informed them that very day. It is also plausible that the passage of two years could have compromised their memories. Even if he did not immediately report this to a supervisor, it is clearly understandable, considering that he testified that he assumed he had pulled a muscle. Accordingly, we hold that prong one of the *Bruno* test is met, as Mr. Dupuis' version of the incident is not discredited. The credibility problems the defendant presents revolve around outside issues of the plaintiff's life, and not this specific injury.

The second requirement of the *Bruno* test is corroboration. Corroboration may be in the form of medical evidence. Mr. Dupuis did not see a doctor for about a week after his injury, but this is not unusual when a person believes he has suffered a pulled muscle and hopes to recover without medical intervention. Medical evidence from this injury corroborates Mr. Dupuis' testimony that he suffered an injury. The previous injury suffered twenty years earlier was diagnosed as a compression fracture of L2-L4 with L2 having a fifteen percent compression and L4 having an anterior superior chip fracture. Each time Mr. Dupuis sought medical aid for his present injury, he informed all of the doctors of his prior injury. An MRI performed on June 1, 2001, showed a disc protrusion at L3-4 with associated ostephyte formation. On July 11, 2001, a post myleogram CT found a tiny left posterolateral protrusion at L4-5 and a broad base cervical protrusion at L5-S1. A functional capacity evaluation conducted April 23-24, 2002 revealed a functional level of sedentary. The medical

9

evidence presented clearly corroborates the claimant's testimony that he suffered an injury and that this injury is not the same as the previous injury.

The accident report completed by Mr. Thomasee indicated the date of injury as April 16, 2001, and that Mr. Dupuis was injured while pulling on a rope. That report also suggested that future actions be undertaken only by two men on each side. Also, the defendant sought compensation from the second injury fund but was denied, and in their appeal, they stated that the claimant was injured on April 16, 2001 and that the defendant knew of the claimant's prior injury. Based on the foregoing discussion, we find that the claimant did suffer a work-related accident that did cause his present injury. "If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident out of an in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated." La.R.S. 23:1031(A). We therefore reverse the Workers' Compensation Judge and order that workers' compensation and medical benefits be reinstated, as well as back indemnity compensation from date of termination.

**ASSIGNMENT OF ERROR NUMBER TWO**

The plaintiff requested penalties and attorney fees, however, we find that they are not appropriate in this case. We affirm the Workers' Compensation Judge's failure to grant penalties and attorney fees. In order for the plaintiff to recover penalties and attorney fees, there must be a showing that the defendant did not raise a seriously disputed issue. To reasonably controvert claim, for purposes of determining whether worker's compensation claimant is entitled to penalties and

10

attorney fees based on employer's failure to pay benefits, employer must have some valid reason or evidence upon which to base his denial of benefits. *Johnson v. Johnson Controls, Inc.,* 38,495, pp. 16-17 (La.App. 2 Cir. 5/12/04), 873 So.2d 923, 933-34. The defendant had a legitimate defense because the plaintiff failed to disclose his prior injury and this area has been the subject matter of much debate. Provision of worker's compensation statute authorizing award of attorney fees to claimant is penal in nature and, thus, must be strictly construed and employer should not be penalized for taking close factual or legal question to court for resolution. *Lindon v. Terminix Servs., Inc.*, 617 So. 2d 1251, 1253 (La.App.3 Cir.), *writ denied,* 624 So.2d 1226 (La. 1993).

**CONCLUSION**

We therefore reverse the Workers' Compensation Judge's decision to deny compensation and order that compensation be immediately reinstated. Costs of this appeal are assessed to Picard Steel Erectors, Inc.

**REVERSED**.