957 So.2d 852 (2007)
Octavia SHELVIN
v.
INTRALOX, L.L.C.
No. 2006-CA-1418.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 2007.
Rehearing Denied June 6, 2007.
*853 Octavia Shelvin, Gonzales, LA, In Proper Person, Plaintiff/Appellant.
Joseph B. Guilbeau, Juge, Napolitano, Guilbeau, Ruli, Frieman & Whiteley, Metairie, LA, for Defendant/Appellee, Intralox, LLC.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III and Judge LEON A. CANNIZZARO JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
Plaintiff-appellant, Octavia Shelvin, appeals pro se, the summary judgment dismissal of her workers' compensation claim against the defendant-appellee, Intralox, LLC. We affirm.
The plaintiff alleges that on July 1, 2003, she attempted to lift a box in the course and scope of her employment as a result of which she sustained a compensable injury to her back.
Plaintiff complains that she hired an attorney who advised her to seek workers' compensation benefits who she feels let her down by not attending the summary judgment hearing.
The defendant's answer denied that any compensable accident occurred. The defendant notes that the plaintiff continued to work her usual and customary duties for just over a year after the July 1, 2003 date of her alleged injury.
On April 25, 2006, the workers' compensation judge proceeded with the hearing on the defendant's motion for summary judgment. Neither the plaintiff nor her attorney were present. The transcript reflects that the defendant's attorney argued to proceed with the hearing based on the contention that the hearing had been continued several times and that there was a "green card" (presumably referring to the postal receipt in the record) showing that service had been received in plaintiff's counsel's office. At the hearing the defense counsel represented to the court that he had no knowledge of a request for a *854 continuance on behalf of the plaintiff. The plaintiff does not contend otherwise.
Based on the record we find no abuse of the trial court's discretion in the conduct of its proceedings when it decided to proceed with the summary judgment hearing in the absence of the plaintiff and her counsel.
In June of 2006, the plaintiff received a letter from her attorney informing her that her claim had been dismissed. The plaintiff annexed a copy of that letter to her motion to appeal. In it her attorney explained to her that "as we discussed in our very first meeting" that prescription was a problem and that "secondly that your injury was of an ongoing nature, meaning that there was not one specific incident that occurred but instead a degeneration over time." The letter went on to mention that the strategy had been to delay the summary judgment hearing as long as possible because of the weakness of the case in hopes that in the interim a settlement could be reached or the case brought to mediation, but that the court proceeded to trial before those goals could be met.
The letter closes with the information that the plaintiff has the right to appeal the summary judgment dismissal of her case, but that her appeal is without merit. We agree.
At the outset we shall dispose of Intralox's prescription argument. Plaintiff alleges that her work related accident occurred on July 1, 2003. In her brief to this Court the plaintiff states that she first saw an attorney in connection with this matter on January 11, 2005, well over a year after the occurrence of the alleged accident. That attorney subsequently filed the LDOL-WC-1008 Claim Form on the following day, over a year and a half after her alleged work place accident. Intralox says that that filing was untimely and that her claim has prescribed. We find no exception of prescription filed in the record in either the workers' compensation proceedings or in this Court. While Intralox argues that the plaintiff's claim has prescribed, Intralox never states that it filed an exception of prescription. In a case that is exactly on point regarding Intralox's prescription argument this Court has held:
Defendants suggest in brief that plaintiff's tort claims have prescribed. No exception of prescription was filed below. An exception of prescription may be filed for the first time in this Court. LSA-C.C.P. art. 2163. However, the defendants have not done so. They have only mentioned the issue in their brief. An exception of prescription presented only in argument either orally or by way of memorandum or brief is not sufficient. Rapp v. City of New Orleans, 95-CA-1638 p. 50 (La.App. 4 Cir. 9/18/96); 681 So.2d 433, 457, writ denied 96-2925 (La.1/24/97); 686 So.2d 868.
Alomang v. Freeport-McMoran, Inc., 97-1349 (La.App. 4 Cir. 3/4/98), 718 So.2d 971, 973.
Even in those instances where prescription is obvious, this Court is powerless to supply the plea ex proprio motu. La. C.C.P. art. 927 B; Scott v. Scott, 92 2378 (La.App. 1 Cir. 6/24/94), 638 So.2d 1206, 1207 FN 2. Therefore, this Court is without authority to consider Intralox's prescription argument.
The record does not contain a copy of the defendant's motion for summary judgment, but based on the transcript of the hearing, the judgment of the workers compensation judge, and the reference to the "Motion for Summary Judgment" made by plaintiff's counsel in his letter to the plaintiff dated June 6, 2006, annexed to her motion for appeal, we have no reason to doubt that the lower court proceeded on *855 a properly filed motion for summary judgment. The plaintiff does not contend otherwise.
In connection with the motion for summary judgment, Intralox filed a copy of the plaintiff's deposition and medical records. The only evidence in the record is that offered by Intralox. However, the plaintiff has the benefit of her deposition testimony as that is included among Intralox's exhibits.
The plaintiff alleges that on July 1, 2003, she attempted to lift a box in the course and scope of her employment as a result of which she "felt this click, I call it a crick in my back. . . ."
In her deposition plaintiff testified that she had no previous back injury requiring treatment. She claims she reported the incident to the floor supervisor and that for the rest of her shift she experienced back pain. The next night she requested a back brace from the said floor supervisor, but was not furnished with one until October, at least three months after the initial incident.
She testified that she was required to do the same kind of heavy lifting until she was terminated slightly over one year later. She also testified that up until the time she was terminated she had no other occasion to report another incident or accident other than her request for a back brace. Instead, plaintiff testified that she,
. . . just told my supervisor that I was going to the doctor and that my back was hurting. When she would ask me to do overtime, I would also tell her why I couldn't do the overtime was because of my back.
Prior to the alleged heavy lifting accident, the plaintiff used overtime on a regular basis, but after the accident she testified that she did little or none. She testified that she asked her supervisor for a week off because of her back, but was told that, "it wasn't convenient at the time."
The plaintiff testified that she received her first treatment for the lifting accident at the Ochsner Emergency room because "her back was really hurting" and she was not able to otherwise schedule an immediate regular orthopedic appointment.
When asked if she told Dr. Williams about the lifting accident when she eventually was able to schedule a regular orthopedic appointment, she testified that:
Basically I just told her, you know, the pain that I was having, it was excruciating pain because it was 24/7; it didn't let up at all.
The plaintiff next testified that "basically" Dr. Williams was "the one" that helped her manage her pain, not the Ochsner emergency room. Although she thought it likely that she told Dr. Williams about the lifting accident and that she was taking Tylenol and Aleve without success, but she was not absolutely certain.
Although she had no further accidents, because her lifting duties continued after the accident she continued to experience pain, although not as much as in July of 2003: "It was just constant pain," that never really went away.
She testified that she went to Ochsner on one occasion after awakening one morning and "couldn't get out of bed."
When asked about the physician report of January 26, 2004, where it states that she had "complaints of right knee pain and back pain," but that "she reports that the pain had resolved," she explained that she was referring to the knee pain. The next paragraph of the report contains the following statement: "She also reports low back pain for about a week." The report also noted that she did "quite a bit of lifting with her job."
*856 When defense counsel suggested during the course of the deposition that he inferred that it was not just the lifting that was causing her back problems, she responded: "I never had any problem before [the lifting accident]." After the accident she stated that she experienced problems getting up and down.
Next, defense counsel noted that in the physician report of March, 17, 2004, she was again complaining of leg and back pain.
Plaintiff testified that shortly after the initial incident she took off two or three days and on another occasion a week. She testified that the first time right after the accident she got a slip from the emergency room physician prescribing no work activities, but that the second time, "I was just in so much pain I just went home and stayed for the whole week."
When asked whether she recalled Dr. Williams ever telling her to stop working she responded:
A. Not that I recall.
Q. Okay.
A. But she would ask me, "Do you think you can work?" And I would say, "I have to work."
* * * * *
A. Well, she would Like suggest to me that maybe if I could change my job, and I said really there was nothing to change to.
The plaintiff testified that her pain had lessened since she stopped working, but that, "If I do a lot, then I get more pain." She testified that she does not schedule appointments because of her back pain unless it flairs up more intensely, because she feels there is nothing the doctor can tell she doesn't already know about it. For example, in January of 2005, it got much worse so she went to see the doctor about it. She has had no subsequent flair up of the magnitude of the January, 2005 flair up.
Plaintiff testified that after the accident she would ask co-workers to assist with heavy lifting, but she did not go to her supervisor with her problem because she felt that the supervisor would be unresponsive.
She testified that about fifteen other employees were terminated at the same time she was. She stated that when she did job searches while she was receiving unemployment benefits subsequent she searched for a cashier position, a position she had held in the past, and one "that didn't require any heavy lifting."
Plaintiff testified that had she not been terminated she would have continued to work unless the pain became too intense. She said that the job was becoming increasingly difficult for herit had reached a point where she, "would go to work, go home, go to bed . . ."
When confronted by defense counsel with the fact that "no doctor as of today has taken you off of work," she explained that she "would tell them I have to work." She stated that at the time of the deposition she was still able to engage in the activities she had always engaged in, but she explained that prior to the accident, "I was not very active other than walking, and I can still walk, but not a long distance." She stated that she could walk normally until "the back pain starts . . ." She testified that after the accident she experienced back pain every day at work.
The plaintiff claims that for a week she managed with over the counter pain medications, but that her pain became progressively worse, compelling her to seek medical attention. As her physician had no appointments available for two weeks, he advised her to seek emergency room treatment. *857 Accordingly, she went to the Ochsner emergency room where she was given pain pills and told to take off three days of work which she did.
Plaintiff states that she continued to work in pain "because of the company's policy concerning missing work." Plaintiff alleges that her doctor eventually prescribed steroids and recommended an MRI which revealed a herniated disc. On July 16, 2004, the plaintiff's employment was terminated. The reason given on her termination slip was: "Violated Laitram business policy." Up to that time plaintiff had made no claim for either weekly compensation benefits or medical expenses. In fact, plaintiff does not dispute the fact that no such claim was made until the following January when her attorney filed the claim that is the subject of this appeal.
In Dupuis v. Picard Steel Erectors, Inc., 04-172, p. 8 (La.App. 3 Cir. 9/29/04), 883 So.2d 1092, 1097-1098, the court explained how, if her allegations are found to be true, the plaintiff could be considered to have suffered an accident:
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Indeed, it is well-settled in Louisiana that an "accident" exists when "heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." Moreover, Louisiana courts view the question of whether there was an accident from the worker's perspective.
Id., quoting Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 360 (La.1992).
However, while the Dupuis court then goes on to note that a worker's testimony alone may suffice to discharge the burden of proof, it is not quite that simple:
Although the court looks to see if an accident occurred from the worker's perspective, the worker still bears the burden of proving there was an accident:
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubts upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. . . . Corroboration may also be provided by medical evidence.
Id., 04-172, p. 8, 883 So.2d at 1098, quoting Bruno, supra, 593 So.2d at 361.
Plaintiff's deposition testimony does tend to show that she hurt her back on the job in what could be described as a workplace accident meeting the, Bruno standard, supra. However, there is nothing in the record to corroborate her testimony.
This Court reviews summary judgments de novo. It is well settled that manifest error is not the standard of review:
First, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. See Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 at pp. 16-17 (La.2/29/00), 755 So.2d 226, 236 (noting the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion"); See also Hebert v. St. Paul Fire and Marine Ins. Co., 99-0333 (La. App. 4th Cir.2/23/00), 757 So.2d 814.
Willis v. Medders, 00-2507, p. 2 (La.2/8/00), 775 So.2d 1049, 1050.
However, where the mover, in this case Intralox, will not bear the burden of proof at trial,

*858 according to La. C.C.P. 966(C)(2), the mover need not negate all essential elements of the adverse party's claim, action, or defense, but rather need point out to the court that there is an absence of factual support of one or more elements of the claim. Once the movant negates such a necessary element(s) of the adverse party's claim, the burden then shifts to the adverse party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Lozier v. Security Transfer and Inv. Corp., 96-2690 (La.App. 4 Cir. 4/30/97), 694 So.2d 497. The effect of the legislature's 1996 amendment to La. C.C.P. art. 966 is that the non-moving party is not allowed to rely on the allegations of its pleadings in opposition to a properly supported motion for summary judgment. Oakley v. Thebault, 96-0937 (La. App. 4 Cir. 11/13/96), 684 So.2d 488.
Moody v. City of New Orleans, 99-0708, pp. 1-2 (La.App. 4 Cir. 9/13/00), 769 So.2d 670, 671.
The medical records contain no mention of any accident or any reference to work restrictions. This and the fact that the plaintiff continued to work for a year after the alleged accident doing the same work casts uncertainty on the reliability of her testimony. Her own uncontradicted testimony alone will not be sufficient for her to bear her burden of proof at trialshe must have corroboration, and there is nothing in the record to show that she could produce such corroboration at a trial on the merits. An affidavit from a co-worker might have sufficed; something in the medical records referring to the lifting incident or suggesting work limitations might have created a genuine issue of material fact sufficient to warrant referring the matter to the trier of fact at a trial on the merits. However, none of these or anything equivalent is in the record. As may be seen by the discussion above of the plaintiff's deposition testimony as well as the medical records, this Court has done an exhaustive de novo review of the record, and found nothing sufficient to create a genuine issue of material fact concerning the plaintiff's ability to corroborate her testimony or to dispel the doubtful circumstances were there to be a full blown trial on the merits.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.