Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,054-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MICHAEL SPILLMAN                                  Plaintiff-Appellant

versus

CAREER ADVENTURES, INC.,                        Defendants-Appellees
AND RISK SAVERS, LLC

* * * * *

Appealed from the
Office of Workers' Compensation, District 1W
Parish of Caddo, Louisiana
Trial Court No. 19-05721

Linda Lea Smith
Workers' Compensation Judge

* * * * *

FISCHER & MANNO                                 Counsel for Appellant
By:  Mark K. Manno

Don Anzelmo                                     Counsel for Appellees

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**STONE, J.**

The plaintiff-appellant, Michael Spillman ("Mr. Spillman"), appeals the decision of the worker's compensation judge ("WCJ") denying his claim for benefits. The WCJ found that Mr. Spillman suffered a work-related injury (torn tendon in left elbow), but that Mr. Spillman: (1) failed to carry his burden of proving that, because of the elbow injury, he cannot earn at least 90% of what he was earning pre-injury; and (2) pursuant to La. R.S. 23:1208.1, he forfeited any benefits due to him by failing to truthfully answer his employer's inquiries regarding any pre-existing medical conditions. On appeal, Mr. Spillman argues that both findings are erroneous, and requests that this court reverse the WCJ's decision and award him benefits *de novo*. The defendant-appellee, Career Adventures, Inc. ("Career Adventures"), is a temporary staffing company for which Mr. Spillman began working in July of 2018. Mr. Spillman worked exclusively as a welder at General Electric while employed by Career Adventures. Career Adventures filed an answer to the appeal, and argues that the WCJ erred in finding that Mr. Spillman suffered a work-related injury.

For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Prior to the subject injury, Mr. Spillman had significant injuries and medical concerns as are more fully described herein. In a 2007 work-related accident, a 900-pound metal plate crushed Mr. Spillman's left foot; as a result, he was disabled and on worker's compensation benefits for approximately two years. This injury also left him with regional sympathetic dystrophy ("RSD") of the left foot, which he was still being treated for at the time he began working at Career Adventures. Mr.

Spillman's past injuries have also included a gunshot wound to his upper left leg that was treated surgically, and has continued to cause him chronic pain since. Mr. Spillman has been treated for chronic obstructive pulmonary disease ("COPD") as far back as 2007.

In 2013, Mr. Spillman suffered an injury to the AC joint in his right shoulder that was surgically repaired. Then, in January of 2018, he was involved in a head-on motor vehicle accident and suffered injuries to his right shoulder and right knee which were still causing him high levels of pain as late as three weeks prior to the subject elbow injury (*i.e.*, 15 months after the wreck). Additionally, throughout the decade prior to the subject injury, Dr. Wall (Mr. Spillman's primary care and pain management physician), also treated for COPD, chronic pain, RSD, depression, anxiety, bipolar disorder, allergic sinusitis, chronic fatigue, hypertension, and other ailments and medical conditions.

Mr. Spillman applied for a job with Career Adventures in May of 2018. His application included a preemployment questionnaire styled "Office of Workers Compensation Administration Second Injury Board Questionnaire" wherein Career Adventures presented a battery of questions regarding Mr. Spillman's medical history, current medical condition, and current medical treatment. One part of the questionnaire listed 52 diseases, ailments, and conditions and further instructed the applicant to check "yes" or "no" next to each. Mr. Spillman checked "no" next to each and every item listed. In doing so, Mr. Spillman falsely denied having COPD, hypertension, bipolar disorder, depression, and ADHD. It is undisputed that Career Adventures adequately provided notice of the risk of forfeiture for failure to answer truthfully pursuant to La. R.S. 23:1208.1.

2

Additionally, Mr. Spillman failed to answer questions which, if answered truthfully, would have revealed his history of severe injuries and numerous medical conditions. Furthermore, the questions Mr. Spillman failed to answer were part of a series of questions – and, notably, he *did* answer the questions which, answered truthfully, would not reveal any pre-existing medical conditions. The series of questions, and Mr. Spillman's answers and non-answers, are as follows:

- Has any doctor ever restricted your activities? (Mr. Spillman did not answer this question).
- If yes, please list the restrictions: (Mr. Spillman did not list any restrictions).
- Are you currently restricted? **Mr. Spillman truthfully denied current restrictions**.
- What is the medical condition for which you are restricted? (Mr. Spillman did not state any medical condition or conditions).
- Are you presently treating with a doctor…? (Mr. Spillman left this question blank).
- Please list the medical condition being treated. (Mr. Spillman did not list any conditions).
  The questionnaire also requested the doctor's name, address, and specialty. (Mr. Spillman did not respond to these requests).
- If you are presently taking medication other than those listed on the Explanation Page, please [list all such medications and provide the name of each prescribing doctor]. (Mr. Spillman did not respond to this request).
- Have you ever had an on-the-job accident? If you answered "Yes," please provide the date for each injury and the nature of each injury. (Mr. Spillman did not answer these questions).
- How long were you on compensation? (Mr. Spillman did not answer this question).
- Has a doctor recommended a surgical procedure, which has not been completed prior to this date, including but not limited to knee, hip or shoulder replacement? **Mr. Spillman truthfully answered this question "No."**
- Mr. Spillman also left blank a question regarding whether he ever had a surgical procedure.

Had Mr. Spillman provided truthful answers to all of these questions, he would have disclosed: (1) his foot having been crushed by a 900-pound metal plate in an "on-the-job" accident, and resulting two year receipt of

3

worker's compensation disability benefits while being out of work, and chronic pain and RSD; (2) the gunshot wound to his upper left leg, which required surgery, and presumably a medical restriction of his activities; (3) the surgery to repair the AC joint in his right shoulder, and presumably a medical restriction of his activities, and apparent chronic pain; (4) the 14 prescription medications he was taking at the time he submitted the application, including but not limited to muscle relaxers, anticonvulsants, antidepressants, stimulants, and opioid pain medications.

Mr. Spillman contends that the insurance adjuster's notes regarding his claim show that Career Adventures subsequently gained actual knowledge of his pre-existing conditions, and had time to correct this misinformation before the accident.[1]

Mr. Spillman worked for Career Adventures from July of 2018 until he sustained his left elbow injury in April of 2019. Career Adventures did not guarantee Mr. Spillman 40 hours a week, and Mr. Spillman often did not work that many hours. He also had significant absences for medical reasons. For example, from December 21, 2018, to January 2, 2019, Mr. Spillman was absent from work pursuant to a doctor's excuse. Mr. Spillman also missed work because of his RSD, apparently on both February 7 and February 8, 2019. Dr. Wall wrote him an excuse for these days.

---

[1] These notes were made on April 27, 2019, through April 30, 2019, *i.e.*, multiple weeks after Mr. Spillman's injury. They merely reflect Mr. Spillman's own self-serving statements that "the employer...knows that he was shot in his leg and had a shoulder injury in the past." Apparently, Mr. Spillman made these statements in the context of being confronted about omitting these past injuries from the preemployment questionnaire. Furthermore, Mr. Spillman made no allegation regarding *when* Career Adventures (allegedly) obtained this information.

On March 12, 2019, three weeks before the injury in question, Mr. Spillman went to the Highland Clinic complaining of right shoulder pain and right knee pain attributable to the 2018 motor vehicle accident. He rated his knee pain as "8/10" and indicated that it was constant; he rated his shoulder pain as a "7/10" and indicated that it occurred occasionally. Mr. Spillman described the knee pain as aggravated by bending, climbing and descending stairs, walking, and standing. The symptoms associated with this knee pain included decreased mobility, joint tenderness, nocturnal pain, and nocturnal awakening. Mr. Spillman described his shoulder pain as sharp, and as aggravated by lifting objects and by movement; his associated symptoms included decreased mobility, joint tenderness, nocturnal awakening, nocturnal pain, and swelling. Mr. Spillman obtained a doctor's excuse from work for one day in relation to this knee and shoulder pain.

Mr. Spillman testified that, prior to the left elbow injury for which he now claims compensation, he was able to work as a welder despite his many pre-existing conditions and medications. Through Career Adventures, Mr. Spillman was welding for General Electric on April 5, 2019. Allegedly, while swinging a 5-pound leather mallet (or "maul"), he began to feel a burning pain in his left elbow. Mr. Spillman further alleges that he did not immediately report the injury because he was afraid that General Electric would not hire him on a permanent basis if he did so. Although he eventually reported the injury, the actual date of reporting is disputed.

The following is a timeline of Mr. Spillman's post-injury reporting of the injury and doctor visits[2] as follows:

---

[2] Mr. Spillman also made other doctor visits but they do not bear mention here.

- April 5, 2019: Mr. Spillman made a visit to a medical clinic in Stonewall, LA; diagnosis of lateral epicondylitis of left elbow, and receipt of instructions for treatment of tennis elbow.

- April 8, 2019: Mr. Spillman made a visit to his regular physician, Dr. Wendell Wall ("Dr. Wall"); Dr. Wall's notes contain a typographical error, but he testified that he believes they reflect Mr. Spillman describing the injury as something that "happened quickly."

- April 8, 2019: Mr. Spillman contends that, on this date, he notified his supervisor at General Electric, James King, of the injury and provided work excuses from both doctors; James King contradicted this testimony; in effect, he said Mr. Spillman did not notify him until the text message of April 27, 2019, *infra*.

- April 15, 2019: Mr. Spillman made a visit to Willis Knighton Quick Care; the notes say tendinitis was the original diagnosis for Mr. Spillman's left elbow, and that he was in constant pain of the left elbow since approximately two weeks beforehand.

- April 27, 2019: Mr. Spillman sent a text message to James King notifying him of the injury, and submitted an incident investigation form, wherein he also reported the injury, but here described as "it happened [sic] slowly, with in [sic] a few days… Got wurse [sic] last two days."

- June 4, 2019: Mr. Spillman made another visit to Dr. Wall, who concluded that the left elbow injury was "obviously work related."

- June 20, 2019: MRI at LSU Hospital showing a "partial tear of the common extensor tendon."

Dr. Wall stated that, prior to the left elbow injury, Mr. Spillman had no problems with his left elbow, and was stable and able to work. Based on his two treatments of Mr. Spillman after the elbow injury, along with his review of the reports from other physicians, Dr. Wall opined that a work "accident" caused the torn tendon in Mr. Spillman's left elbow.

Dr. Wall also testified that Mr. Spillman's pre-existing conditions would prevent him from doing certain things, and that the new left elbow tendon injury would also prevent him from doing certain things; and, these two groups of limitations would "merge" to create a greater total disability.

In the written reasons for judgment, the WCJ found that Mr. Spillman suffered a work-related injury. However, the court denied Mr. Spillman's claim for benefits on two grounds: (1) Mr. Spillman failed to adequately prove his inability to earn at least 90% of his pre-injury income as a result of the left elbow injury; and (2) Mr. Spillman forfeited entitlement to worker's compensation benefits by failing to truthfully answer the employer's preemployment medical questionnaire as provided in La. R.S. 23:1208.1.

Mr. Spillman now appeals and argues that both of the WCJ's grounds for denying his claim are erroneous. In addition to filing a brief in opposition to Mr. Spillman's appeal, Career Adventures argues that the WCJ committed manifest error in finding that Mr. Spillman proved a work-related injury.

**Standard of review**

The manifest error standard of review is applicable to findings of fact of the WCJ:

> It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determination shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Therefore, the appellate standard of review applicable to the findings of a WCJ is the manifest error-clearly wrong test

*Harvey v. Sol's Pipe & Steel, Inc.*, 50,114 (La. App. 2 Cir. 10/28/15), 180 So. 3d 486, 489.

**Work-related injury**

Career Adventures argues that the WCJ committed manifest error in finding that Mr. Spillman carried his burden of proving that he suffered a

work-related injury. Mr. Spillman contends that he experienced a sudden burning pain in his left elbow while swinging a mallet at work.

An employee is entitled to worker's compensation benefits if he receives personal injury by ***accident*** arising out of and in the course of his employment. La. R.S. 23:1031(A). (Emphasis added). La. R.S. 23:1021(1) defines "accident" as:

> an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

Career Adventures argues that Mr. Spillman's testimony is his only proof that his torn elbow tendon was a work-related injury. Pursuant to *Bruno v. Harbert Int'l, Inc.,* 593 So. 2d 361 (La. 1992), Career Adventures argues that for a worker's testimony alone to be sufficient, two elements must be satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) worker's testimony is corroborated by the circumstances following the alleged incident. *Id.* In determining whether these two elements are satisfied, the following six factors should be considered: (1) whether the worker was late in reporting the alleged injury; (2) testimony of the worker's supervisor and coworkers; (3) the testimony of family and friends of the worker; (4) medical evidence; (5) whether the worker continued to work after the alleged injury; (6) prior injuries. *Harvey, supra.*

Career Adventures argues that, at the Stonewall Clinic on the day of the alleged accident, Mr. Spillman denied any injury at that time. Career Adventures further argues that Dr. Wall's records from the following Monday, April 8, 2019, show that Mr. Spillman stated that he did not know

how the elbow pain started. Finally, Career Adventures asserts that none of the medical records contain any history of the alleged work accident.

We find no manifest error in the trial court's determination that Mr. Spillman's left elbow injury was work-related. Mr. Spillman testified that the pain in his left elbow began while he was swinging a mallet at work. He went to the doctor that day and sought treatment for pain in his left elbow. He went to the doctor several more times regarding, at least in part, his left elbow pain, and was eventually diagnosed with a torn tendon in his left elbow. In his testimony, Dr. Wall opined that Mr. Spillman's injury was work related. Thus, Mr. Spillman's claim that the injury was work-related was sufficiently corroborated. Finally, in its brief, Career Adventures failed to cite any evidence that the injury did not occur while Mr. Spillman was swinging a mallet in his work as an employee of Career Adventures. Nor does our review of the record reveal any such evidence. This assignment of error is rejected.[3]

**Forfeiture of benefits pursuant to La. R.S. 23:1208.1**

The issue is whether the WCJ committed manifest error in holding that Career Adventures adequately proved that: (1) Mr. Spillman failed to answer the preemployment questionnaire truthfully; and (2) Mr. Spillman's failure to truthfully answer questions about his history of disabilities and medical restrictions, prejudiced Career Adventures' ability to obtain reimbursement from the Second Injury Fund ("SIF").

---

[3] Career Adventures' argument on this point centers around the notion that Mr. Spillman's torn left elbow tendon was not the result of an "accident" as defined in La. R.S. 23:1021(1). To this end, Career Adventures suggests, based on Mr. Spillman's medical records, as well as his statements in the report of the injury, that, somehow, the torn left elbow tendon was something that did not happen "suddenly or violently," and did not produce "objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

Career Adventures points out that Dr. Wall's testimony – that Mr. Spillman's pre-existing conditions would merge with the elbow injury to create a greater total disability – establishes that Career Adventures suffered prejudice. Career Adventures also argues at length regarding the prejudice it suffered as a result of Mr. Spillman's failure to answer questions which, if answered truthfully, would have disclosed his history of severe injuries, pain, and surgeries. The WCJ rejected this argument on the ground that not answering a question at all does not constitute an untruthful statement.

Mr. Spillman argues that: (1) although Dr. Wall did give testimony that, viewed in isolation, would establish prejudice, later in his deposition he retracted or contradicted that testimony; (2) these pre-existing conditions did not rise to the level of a permanent partial disability; and (3) even if they did rise to the level of a permanent partial disability, the Career Adventures knew about them despite Mr. Spillman's failure to answer truthfully, and had opportunity to correct the misinformation prior to Mr. Spillman's subject injury.

La. R.S. 23:1378(A), in relevant part, provides for employers to be reimbursed from the SIF as follows:

> An employer operating under the provisions of this Chapter who ***knowingly*** employs…an employee who has a permanent partial disability, as defined in R.S. 23:1371.1, shall qualify for reimbursement from the Second Injury Fund, if the employee incurs a subsequent injury arising out of and in the course of his employment resulting in a greater liability due to the merger of the subsequent injury with the preexisting permanent partial disability. (Emphasis added).

La. R.S. 23:1371.1(3) defines "permanent partial disability" as:

> any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute hindrance or obstacle to obtaining employment, to

10

retention by the employer, or to obtaining reemployment, if the employee becomes unemployed

There are three requirements for reimbursement from the SIF: (1) employment of a worker who the employer knows has a permanent partial disability; (2) the employee incurs a work-related injury; and (3) the employer incurs greater liability due to the merger of the work-related injury with the pre-existing permanent partial disability. La. R.S. 23:1378(A); La. R.S. 23:1371.1(3).

In relevant part, La. R.S. 23:1208.1 provides that an injured employee forfeits entitlement to compensation as follows:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and *the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits* under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. (Emphasis added).

Thus, La. R.S. 23:1208.1 sets forth three essential elements for forfeiture: (1) the employee failed to answer truthfully; (2) prejudice to the employer, which may be established if the failure to answer truthfully is (a) directly related to the medical condition for which the employee is seeking compensation, or (b) affects the employer's ability to recover from the SIF; and (3) the employer has provided contemporaneous notice to the claimant that false statements made in response to the inquiry may result in forfeiture.

*Failure to answer truthfully.* In *James v. Express Marketing, Inc.*,12, 710 (La. App 2 Cir. 12/5/07), 973 So. 2d 125, 130, *writ denied*, 2008-0062 (La. 3/7/08), 977 So. 2d 910, the worker denied having "back pain" or "backache" in an employment questionnaire, and subsequently suffered a

11

work-related back injury. The WCJ found that the worker had falsely denied backache and back pain in violation of La. R.S.23:1208.1. This court ruled that the WCJ, in doing so, committed manifest error because the prior injury did not rise to the level of a permanent partial disability, and therefore the claimant's denial of prior back pain did not constitute a false answer that caused prejudice to the employer.

In *Wise v. J. E. Merritt Constructors, Inc.,* 1997-0684 (La. 1/21/98), 707 So. 2d 1214, the preemployment questionnaire, which the claimant completed in 1994, inquired whether the claimant ever had arthritis or knee problems using a "yes" or "no" format. Despite having an episode of arthritis in his knee which merely required him to be placed on light duty for one week in 1991 (and thereafter caused claimant no further problems or symptoms), the claimant left blank the question about arthritis, and put, then scratched out, "no" regarding knee problems. The court held that the questions were ambiguous, and that the answers were "ambiguous" rather than false; on that basis, the employee did not fail to answer truthfully. *Id.*

However, if the questionnaire is unambiguous, failure to answer at all may constitute "failure to answer truthfully" for the purpose of La. R.S. 23:1208.1. *Roberts v. D & J Const. Co.,* 42,510 (La. App. 2 Cir. 11/14/07), 969 So. 2d 811, w/d, 2007-2404 (La. 2/15/08),976 So. 2d 178.

If the employee falsely denies a pre-existing condition in the medical background questionnaire but the employer nonetheless gains knowledge of the pre-existing condition, and has the opportunity to correct the misinformation prior to the worker's work-related injury, there is no prejudice to the employer for purposes of La. R.S. 23:1208.1. *Dupuis v.*

12

*Picard Steel Erectors, Inc.,* 2001-172 (La. App. 3 Cir. 9/29/01), 883 So. 2d 1092.

It is undisputed that Mr. Spillman falsely denied having COPD, hypertension, depression, bipolar disorder, and ADHD. The WCJ, in finding that Mr. Spillman forfeited his benefits pursuant to La. R.S. 23:1208.1, did not consider the information which Mr. Spillman would have disclosed had he not failed to answer several questions at all. The WCJ held that Mr. Spillman's mere failure to answer could not be counted against him for purposes of La. R.S. 23:1208.1, but Mr. Spillman nonetheless forfeited his benefits based strictly on the pre-existing conditions which he falsely denied.

We go further than the WCJ. All information which would have been disclosed had Mr. Spillman truthfully answered each and every question on the preemployment questionnaire must be considered in determining whether the other elements of La. R.S. 23:1208.1 are satisfied. Mr. Spillman, in failing to answer several questions, purposefully concealed: (1) his crushed left foot, and resulting stint on worker's compensation disability benefits and chronic pain; (2) his gunshot wound to his left leg, surgical treatment therefor, and resulting chronic pain; (3) his surgery to repair the AC joint of his right shoulder, and subsequent re-injury of it in a car wreck, and apparent chronic pain; (4) his apparently chronic right knee pain from the same car wreck; (5) his 14 prescription medications that he was taking at the time of the application; (6) his treatment with Dr. Wall for his multifarious pre-existing conditions throughout the decade preceding (and continuing on the date of) his application at Career Adventures. Mr. Spillman did not answer any of the questions which, if answered truthfully, would have revealed these numerous and substantial medical problems. In

13

contrast, he did answer all of the questions which he could answer truthfully without revealing his pre-existing conditions.[4] Mr. Spillman's selectivity in answering or not answering the questions demonstrates his intent to conceal his pre-existing conditions from Career Adventures. Accordingly, all of the pre-existing medical conditions which would have been revealed had Mr. Spillman *truthfully answered* the entire questionnaire must be considered in determining whether the other elements of La. R.S. 23:1208.1 are established.

*Prejudice to the employer*. *Guichard Operating Co., LLC v. Porche*, 2015-1942 (La. App. 1 Cir. 1/5/17), 212 So. 3d 701, 710 elaborates the test for prejudice to the employer as follows:

> Under the first prong of the "prejudice to the employer" test, a direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the pre-existing condition. Under the second prong, involving "merger," the employer must prove that the employee had a permanent partial disability that merged with the injury to produce a greater disability than would have resulted from the subsequent injury alone. (Internal citations omitted).

Mr. Spillman's pre-existing conditions, at least when viewed collectively, must be regarded as a permanent partial disability. Because of his pre-existing conditions, Mr. Spillman's total level of disability is significantly greater than it would be if the left elbow injury were his only problem. The evidence in the record more than adequately proves that the left elbow injury merged with Mr. Spillman's pre-existing conditions to create a greater disability than would have resulted from the left elbow injury alone; in short, the evidence satisfies the "second prong" quoted

---

[4] That is, except that he answered untruthfully in checking "no" regarding COPD, hypertension, and his mental conditions.

above from *Guichard Operating, supra*. On that basis alone, the WCJ was correct in holding that, pursuant to La. R.S. 23:1208.1, Mr. Spillman forfeited whatever entitlement to compensation he may have otherwise had.

However, we find that the "first prong" of the test elaborated by *Guichard Operating, supra,* is also adequately established by the evidence in the record. Given Mr. Spillman's pre-existing conditions, it was very likely that Mr. Spillman would suffer an on-the-job injury while working as a welder – a job that includes swinging a 12-pound sledgehammer and a 5-pound mallet as well as other physical tasks. Prior to applying for a job with Career Adventures, he had surgery on his right shoulder to repair his AC joint, and subsequently reinjured his right shoulder in a car wreck. Only three weeks before the injury to his left elbow, Mr. Spillman had gone to the doctor for pain in his right shoulder. In seeking treatment for this right shoulder pain, Spillman indicated that it originated from the 2018 car wreck, and apparently it had been aggravated by his work. He described this shoulder pain as sharp, and as being aggravated by lifting objects and by movement; his associated symptoms included decreased mobility, joint tenderness, nocturnal awakening, nocturnal pain, and swelling. The WCJ could reasonably have concluded that the condition of Mr. Spillman's right shoulder, especially when combined with all of his other pre-existing conditions, rendered it very likely that he would injure his left upper extremity. It can be reasonably inferred from the evidence that Mr. Spillman was using his left upper extremity to compensate for his right shoulder when swinging the 12-pound sledgehammer and 5-pound mallet. Accordingly, it would not have been manifestly erroneous for the WCJ to find a direct relationship between Mr. Spillman's pre-existing conditions and his left

15

elbow injury. Career Adventures has established prejudice under both prongs of the test elaborated in *Guichard Operating, supra.*

In an attempt to invoke *Dupuis, supra*, Mr. Spillman argues that the insurance adjuster's notes regarding Mr. Spillman's claim prove: (1) that Career Adventures obtained actual knowledge of Mr. Spillman's multitude of pre-existing conditions; and (2) did so in time to cure the harm caused by his failure to truthfully answer the preemployment questionnaire. This argument is meritless. The insurance adjuster's notes, which bear a date multiple weeks after the left elbow injury, reflect only Mr. Spillman's self-serving statements that Career Adventures knew about his shoulder injury and gunshot wound.[5] Even if Mr. Spillman's self-serving statements were true, they would not establish that the employer had knowledge of these pre-existing conditions prior to the subject injury. Nor would they establish that the employer ever had knowledge of Mr. Spillman's numerous other pre-existing conditions prior to this lawsuit. This argument is meritless.

The WCJ did not err in holding that Mr. Spillman forfeited his benefits pursuant to La. R.S. 23:1208.1. Accordingly, we pretermit all remaining issues raised in this appeal.

## CONCLUSION

The judgment denying Mr. Spillman's claim for benefits is **AFFIRMED**. All costs of this appeal are taxed to Mr. Spillman.

---

[5] See n.1, *supra*.